UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

FIRSTFIRE GLOBAL OPPORTUNITIES
FUND LLC, Individually and on Behalf of All
Others Similarly Situated,

                     Plaintiff,

      vs.

ABILITY INC., ANATOLY HURGIN and
AVI LEVIN,

                  Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.

COMPLAINT FOR VIOLATIONS OF THE
FEDERAL SECURITIES LAWS

DEMAND FOR JURY TRIAL

Plaintiff FirstFire Global Opportunities Fund LLC ("Plaintiff") makes the following allegations based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Ability Inc. ("Ability" or the "Company"), as well as securities analysts' reports and advisories about the Company, press releases, media reports and other public statements issued by or about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all purchasers of Ability common stock between September 8, 2015 and April 29, 2016, inclusive (the "Class Period"), seeking to pursue remedies under and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa], and 28 U.S.C. §§1331 and 1337.

4.      Venue is properly laid in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District. The Company's stock trades on The NASDAQ Stock Market ("NASDAQ"), which is located in this District.

5.      In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the

United States mails, interstate telephone communications, and the facilities of the NASDAQ, a national securities exchange.

## PARTIES

6.      Plaintiff FirstFire Global Opportunities Fund LLC purchased Ability common stock, as set forth in the certification attached hereto and incorporated herein by reference, and was damaged thereby.

7.      Defendant Ability provides tactical communications intelligence solutions for government agencies, military forces, and law enforcement and homeland security agencies worldwide.  It offers interception, surveillance, decryption, cyber, and geolocation solutions.

8.      Defendant Anatoly Hurgin ("Hurgin") is a co-founder of the Company and served, at all relevant times, as Chairman and Chief Executive Officer of Ability.

9.      Defendant Avi Levin ("Levin") served, at all relevant times, as Chief Financial Officer of Ability.

10.      Defendants Hurgin and Levin are referred to herein as the "Individual Defendants." Ability and the Individual Defendants are referred to herein, collectively, as "Defendants."

11.      During the Class Period, Defendants were privy to confidential and proprietary information concerning Ability, its operations, finances, financial condition and present and future business prospects.  Because of their positions with Ability, Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects *via* internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof and *via* reports and other information provided to them in connection therewith.  Because of their possession of such information, Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12.     Defendants are liable as direct participants in the wrongs complained of herein.  In addition, Defendants were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, Defendants were able to and did, directly or indirectly, control the conduct of Ability's business.

13.     Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public.  Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Thus, Defendants had the opportunity to commit the fraudulent acts alleged herein.

14.     As controlling persons of a publicly-traded company whose stock was registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the federal securities laws, Defendants had a duty to promptly disseminate accurate and truthful information with respect to Ability's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Ability common stock would be based upon truthful and accurate information.  Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15.     Each of the Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Ability common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme:

(i) deceived the investing public regarding Ability's business, operations, and the intrinsic value of Ability common stock; and (ii) caused Plaintiff and other members of the Class to purchase Ability common stock at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

16.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all purchasers, other than Defendants, of Ability common stock during the Class Period (the "Class").

17.    Excluded from the Class are Defendants herein, members of the immediate families of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

18.    The members of the Class are so numerous that joinder of all members is impracticable.  More than 10.53 million shares of Ability common stock were outstanding during the Class Period and actively traded during the Class Period.  The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands.  In addition, the names and addresses of the Class members can be ascertained from the books and records of Ability or its transfer agent.  Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

19.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

20.    Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

21.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

22.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Ability and the Individual Defendants during the Class Period were materially false and misleading;

(c)    whether the price of Ability common stock was artificially inflated during the Class Period; and

(d)    the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

**SUBSTANTIVE ALLEGATIONS**

23.    Defendant Ability "provide[s] advanced interception, geolocation and cyber intelligence tools used by security and intelligence agencies, military forces, law enforcement and

- 5 -

homeland security agencies worldwide." The Company is the sole owner of Ability Computer & Software Industries Ltd.

24. The Class Period begins on September 8, 2015. On that date, the Company issued a joint press release with Cambridge Capital Acquisition Corporation ("Cambridge") announcing the execution of a definitive agreement under which Ability will merge with Cambridge. With regard to the Company's historic financial results, Defendants stated, in pertinent part, as follows:

> Ability's revenues for the six months ended June 30, 2015 rose 162% to $43.0 million from $16.4 million for the comparable period in 2014. During this same period, net income rose at a faster rate, up 394% to $16.8 million from $3.4 million. Ability's LTM June 30, 2015 revenue and net income were $48.7 million and $17.0 million, respectively.

Benjamin Gordon ("Gordon"), Cambridge's Chief Executive Officer, commenting on the merger, stated, in pertinent part, as follows:

> We are excited to partner with Ability. We believe Ability stands out as a leader in providing differentiated solutions in lawful interception and decryption of cellular and satellite communications. The company is led by a talented team of professionals and employs an asset-light business model that supports strong free cash flow potential and high margins.

> Ability has established a reputation in the market, based on management's in-depth understanding of its customers' intelligence needs and a dedication to the quality, reliability, and ease-of-use of its solutions. We look forward to contributing our business and financial expertise to assist Ability in reaching its growth goals.

Defendant Hurgin added, in pertinent part, as follows:

> Our solutions have been deployed in over 50 countries throughout the world and used on countless complex intelligence missions by sophisticated government and security agencies. We believe that this transaction with Cambridge will further increase the market awareness and brand recognition of Ability and help fund our growth strategy. While our primary sales markets today include Latin America, Asia, Europe, and Africa, we see a significant opportunity to expand elsewhere and further develop existing markets. Among our near-term strategic priorities, we intend to establish a meaningful presence in the United States, the largest addressable country market for our solutions, while developing an Eastern European technology hub to lower costs, enhance technology sourcing and enable the distribution of our products into new regions. We also will selectively pursue the acquisition of technologies that can be transferred and applied successfully in our target markets,

while continuing to invest in new products and technologies.  This includes advancing development of an exciting crime prevention system for the civil market, a new LTE cellular interception solution, and more.

25.    With regard to the Company's customer base and financial growth since 2013, the

press release stated, in pertinent part, as follows:

Ability's installed customer base spans five continents and over 50 countries, and its broad range of solutions are utilized by governments, security agencies and law enforcement worldwide.

Ability's primary areas of activity include:

- Cellular interception, including passive and active solutions for GSM, CDMA, UMTS and LTE networks

- Satellite communication interception, including Thuraya, Iridium and VSAT

- Cyber solutions for smartphones and computers

- Customized solutions for specific customer needs

- Geographic-based solutions for cellular location

- Key products currently under development or recently launched include:

- LTE cellular interception solution

- Crime prevention system

- Detector of interception systems

Ability operates in large, growing markets for global homeland security and cyber security markets.  According to Renaissance Strategic Advisors, the global homeland security market is estimated to be $148 billion in 2015, and projected to grow at a 6% CAGR [Compound Annual Growth Rate] from 2015 to 2020.  Homeland security spending includes intelligence community spending, federal and local law enforcement spending, and government investment into cyber technologies.  Ability also participates in the global commercial cybersecurity market, which is estimated to be $93 billion in 2015 and projected to grow at a 17% CAGR from 2015 to 2020. Finally, Ability's primary lawful interception global target market is estimated to be $6 billion and is projected to grow at an 11% CAGR from 2015 to 2020.  Key factors driving this growth include a rise in terrorism, illegal immigration, and smuggling of drugs, firearms and goods, among other security threats.

As illustrated in the table below, Ability's strategy has delivered consistent growth:

*USD, in mms; FY 2013-2014 audited; LTM 6/30/15 unaudited*

| | 2013 | 2014 | LTM 6/30/15 | Earn out Target 2015[1] | Earn out Target 2016[1] | Earn out Target 2017[1] | Earn out Target 2018[1] |
|---|---|---|---|---|---|---|---|
| Revenue | $ 5.6 | $ 22.1 | $ 48.7 | | | | |
| Net Income | $ -0.3 | $ 3.6 | $ 17.0 | $ 27.0 | $ 40.0 | $ 60.0 | $ 80.0 |
| Earnout Shares Issuable | | | | 3.6 mm | 1.85 mm | 2.0 mm | 1.0 mm |

[1] 2015 - 2018 net income based on management earnout

26.    On September 10, 2015, the Company filed its Form 425 with the SEC, which included a presentation regarding the proposed merger of Cambridge and Ability.  With regard to Ability's historic financial performance, Defendants presented the following slides:



**ability**

## Financial Summary

| Financial Summary ($ in 000s) | 2013 | 2014 | Six Months Ended June 30, 2014 | Six Months Ended June 30, 2015 | LTM June 30, 2015 |
|---|---|---|---|---|---|
| (2015 six-month LTM data unaudited) | | | | | |
| Revenue | $5,588 | $22,134 | $16,440 | $43,043 | $48,737 |
| Cost of Goods Sold | $4,455 | $14,654 | $9,564 | $20,516 | $25,606 |
| Gross Profit | $1,133 | $7,480 | $6,876 | $22,527 | $23,131 |
| *Gross Profit Margin* | *20.3%* | *33.8%* | *41.8%* | *52.3%* | *47.5%* |
| Operating Profit/Loss | $49 | $4,624 | $4,580 | $20,069 | $20,113 |
| *Operating Profit Margin* | *0.9%* | *20.9%* | *27.9%* | *46.6%* | *41.3%* |
| Net Income | -$269 | $3,633 | $3,404 | $16,799 | $17,028 |
| *Net Income Margin* | *-4.8%* | *16.4%* | *20.7%* | *39.0%* | *34.9%* |

24

CAMBRIDGE
CAPITAL

27.    On November 18, 2015, Cambridge filed a Form 8-K with the SEC, which contained a transcript of an internet investor presentation held in September 2015, which described the merger. With regard to the Company's financial performance, Gordon stated, in pertinent part, as follows:

> Ability has outstanding growth. Ability tripled last year, is on track to approximately triple this year. We believe we'll continue to grow at a strong rate and is generating strong net income margins in excess of 30%. That financial strength we believe will continue to be supported by additional margin upside from the new software rollout, as well as maintenance and other recurring revenue.

Defendant Levin added, in pertinent part, as follows:

> As you can see, revenue this year would be expected to be at 58 million; last year we had revenue of 20 million. That's almost 3 times as much. And if you go back to 2013, you'll see 5.5 million revenue, very significant growth in a couple of years from 5 million to 58 million. If you look at the fairness opinion, they expected it to be at 108, almost double. If you look at net income, this year we expect it to be at 20 million, last year we had about 4.6 million, 4 times as much. We have a high conversion rate of over 90% of net income to free cash flow. We had a low tax rate of 16% that we benefit from in Israel, one-sixth. We have very good margins, 47% gross margins, 41 to 46% EBITDA margins and 38 to 35% net income margins. Those margins are actually expected to grow as revenue grows, which is not usually the case. If we are able to move in, as we expect, to move into [UI] model, those margins could expand by 700 basis points to about 54% on a gross and the correlate with EBITDA and net income as well. So we're very happy with the company's

performance. The numbers are in, we're very confident with our pipeline [UI] We think that most of it will convert to sales. And on the balance sheet side, it is as clean as can be. We have a balance sheet of 70% cash, no bad debt because our clients are governments and they would pay. We have no debt at all. So basically a straightforward company that's generates cash, always has generated cash, always been cash flow positive, and now we're at experiences tremendous growth and we will like you to share.

28.     On December 23, 2015, Ability issued a press release announcing that the merger with Cambridge had closed. As a result of the merger, Cambridge changed its name to Ability, Inc. and the Company's ordinary shares and warrants would begin trading on the NASDAQ under the symbols ABIL and ABILW, respectively, on December 24, 2015.

29.     On February 16, 2016, Ability issued a press release announcing that it would release its "fourth quarter and full-year 2015 financial results before the market opens on March 3, 2016."

30.     On March 2, 2016, Ability issued a press release announcing that it needed to postpone the release of its fourth quarter and full-year 2015 financial results "until such time that the audit of our financial results is complete."

31.     On March 24, 2016, Ability issued a press release announcing that it "received a letter from the Listing Qualifications Department of the NASDAQ Stock Market, on March 21, 2016, informing the Company that its warrants did not meet the minimum 400 Round Lot Holder requirement for initial listing on the NASDAQ Capital Market, as set forth in Listing Rule 5515(a)(a), and that the Staff has determined to initiate procedures to delist the Company's warrants from the NASDAQ Capital Market."

32.     The statements referenced above in ¶¶25-28 were materially false and misleading when made because they misrepresented or failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them:

        (a)     that Ability had materially overstated its income by failing to account for commissions;

(b)    that Ability had materially overstated its operating results by improperly recognizing revenue on multiple element sale transactions;

(c)    that Ability had materially overstated its income  by failing to account for commissions due to a third party;

(d)    that the Company had a material weakness in its internal controls over financial reporting and disclosure controls, and that such controls were ineffective; and

(e)    as a result of the foregoing, Ability's financial statements for the years ending December 31, 2013 and 2014 were materially false and misleading and not prepared in accordance with Generally Accepted Accounting Principles ("GAAP").  Indeed, Ability has announced that it will be restating its previously-reported financial statements as of "December 31, 2014 and for the two years in the period then ended and as of June 30 and September 30 in 2015 and 2014 and for the six and nine month periods then ended, respectively[.]"

33.    On May 2, 2016, Ability issued a press release announcing its financial results for the fourth quarter and full-year of 2015, the period ending December 31, 2015.  The Company also announced that it would be restating its consolidated financial statements as of "December 31, 2014 and for the two years in the period then ended and as of June 30 and September 30 in 2015 and 2014 and for the six and nine month periods then ended, respectively[.]"  With regard to the restatement, the press release stated, in pertinent part, as follows:

> Our consolidated financial statements as of December 31, 2014 and for the two years in the period then ended and as of June 30 and September 30 in 2015 and 2014 and for the six and nine month periods then ended, respectively, have been restated to reflect corrections of errors with respect to previously unrecognized commissions due to a vendor on revenues that were recognized in 2015, 2014, 2013 and 2012; improper allocation and timing of revenue recognition from connection to supportive infrastructure in multiple element sale transactions recognized in 2015, 2014, 2013 and 2012; and previously unrecognized commissions due to a third party on cost of revenues that were recognized in 2015 and 2014.  We have authorized an internal investigation, to be overseen by our audit committee, into the facts and circumstances

- 11 -

surrounding the restatement, and we expect to engage external consultants to assist us with conducting the investigation following the filing of our Annual Report on Form 20-F for the year ended December 31, 2015.

34.    On May 2, 2016, Ability filed its Form 20-F with the SEC for the year ended December 31, 2015. With regard to the restatement, the report stated, in pertinent part, as follows:

Our consolidated financial statements as of December 31, 2014 and for the two years in the period then ended have been restated to reflect correction of errors with respect to previously unrecognized commissions due to a vendor on revenues that were recognized in 2014, 2013 and 2012; improper allocation and timing of revenue recognition from connection to supportive infrastructure in multiple element sale transactions recognized in 2014, 2013 and 2012; and previously unrecognized commissions due to a third party on cost of revenues that were recognized in 2014. For additional information, including the effect of the restatement on our financial statements for 2014 and 2013, see Note 3 to the audited consolidated financial statements for the year ended December 31, 2015, included elsewhere in this Annual Report.

Certain factors that affect the comparability of the information set forth in the following table are described in "Item 5 Operating and Financial Review and Prospects" and the Financial Statements and related notes thereto included elsewhere in this Annual Report.

| (U.S. dollars; in thousands, except per share data) | For the Year Ended December 31, | | |
| --- | --- | --- | --- |
| | 2015 | 2014 | 2013 |
| | | Restated | |
| **Consolidated Statements of Operations Data:** | | | |
| Revenues | 52,151 | 21,444 | 5,903 |
| Cost of revenues | 29,654 | 13,968 | 4,785 |
| **Gross profit** | 22,497 | 7,476 | 1,118 |
| Sales and marketing expenses | 3,305 | 3,064 | 665 |
| General and administrative expenses | 1,317 | 469 | 419 |
| **Operating income** | 17,875 | 3,943 | 34 |
| Financial expenses (income) net | 99 | (269) | 371 |
| **Income (loss) before income tax** | 17,776 | 4,212 | (337) |
| Income tax expenses (benefit) | 3,023 | 1,090 | (57) |
| **Net and comprehensive income (loss)** | 14,753 | 3,122 | (280) |
| Weighted-average ordinary shares outstanding - basic and diluted | 24,582,874 | 24,582,874 | 24,582,874 |
| Basic and diluted income (loss) per share* | 0.60 | 0.13 | (0.01) |
| Dividends paid** | (14,951) | (817) | (231) |

| | As of December 31, | | |
| --- | --- | --- | --- |
| | 2015 | 2014 | 2013 |
| | | Restated | |
| **Balance Sheet Data:** | | | |
| Cash | 25,829 | 11,709 | 376 |
| Total current assets | 32,801 | 13,585 | 2,547 |
| Total assets | 45,570 | 14,455 | 3,554 |
| Total current liabilities | 15,533 | 12,473 | 4,542 |
| Total non-current liabilities | 12,282 | 257 | 409 |
| Total liabilities | 27,815 | 12,730 | 4,951 |
| Total shareholders' equity (deficit) | 17,755 | 1,725 | (1,397) |

35.    With regard to the Company's new risk disclosures, the Form 20-F stated, in pertinent

part, as follows:

> ***Material weaknesses were noted in our financial reporting closing process with
> respect to cut-off procedures relating to expenses and revenue recognition in
> multiple element transactions, which resulted in a restatement to our consolidated
> financial statements as of December 31, 2014 and for the two years in the period
> then ended and as of June 30 and September 30 in 2015 and 2014 and for the six
> and nine month periods then ended, respectively, and failure to achieve and
> maintain effective internal control over such procedures could have a material
> adverse effect on our business.***
>
> As part of our financial reporting closing process, material weaknesses in our internal
> control over financial reporting were identified with respect to cut-off procedures
> relating to expenses, as certain amounts due to two third parties had not been timely
> expensed, and revenue recognition in multiple element sale transactions had not been
> properly allocated and timely deferred, which resulted in a restatement of the
> consolidated financial statements as of December 31, 2014 and for the two years in
> the period then ended and as of June 30 and September 30 in 2015 and 2014 and for
> the six and nine month periods then ended, respectively.  For additional information,
> see Note 3 to the audited consolidated financial statements for the year ended
> December 31, 2015 included elsewhere in this Annual Report.  Further, it was
> discovered that certain amounts were outstanding as of December 31, 2015, which
> could be deemed a violation of Section 402 of the Sarbanes-Oxley Act of 2002.  The
> outstanding balance has been repaid in full by the Ability shareholders.  Further, in
> 2015, Ability was a victim of fraud committed by an outside, unrelated third party
> resulting in an unauthorized outgoing transfer of $0.5 million.  We intend to address
> our internal control over financial reporting issues in order to remedy these material
> weaknesses.  See "Our internal control over financial reporting do not currently meet
> all of the standards contemplated by Section 404 of the Sarbanes-Oxley Act of 2002,
> and failure to achieve and maintain effective internal control over financial reporting
> could have a material adverse effect on our business." [Emphasis in original.]

36.    In reaction to these announcements, on May 2, 2016, the price of Ability common

stock fell $2.42 per share, or 33%, to close at $4.90 per share, on heavy trading volume.

37.    The market for Ability common stock was open, well-developed and efficient at all

relevant times.  As a result of the materially false and misleading statements and omissions alleged

herein, Ability common stock traded at artificially inflated prices during the Class Period.  Plaintiff

and other members of the Class purchased or otherwise acquired Ability common stock relying upon

the integrity of the market price of Ability common stock and market information relating to Ability, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ability common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Ability's operations, acquisitions and future financial prospects.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Ability common stock and its business, thus causing the Company's shares to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's shares at artificially inflated prices, thus causing the damages complained of herein.

**ADDITIONAL SCIENTER ALLEGATIONS**

40.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in

- 14 -

the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Ability, their control over, and/or receipt and/or modification of Ability's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ability, participated in the fraudulent scheme alleged herein.

## LOSS CAUSATION

41. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Ability common stock and operated as a fraud or deceit on Class Period purchasers of Ability common stock by failing to disclose and misrepresenting the adverse facts detailed herein. As Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Ability common stock declined significantly as the prior artificial inflation came out of the Company's common stock price.

42. As a result of their purchases of Ability common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused Ability common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $10.16 per share on January 4, 2016.

43. By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of Ability's business, products and operations. When the truth about the Company was revealed to the market, the price of Ability common stock fell significantly. These declines removed the inflation from the price of Ability common stock, causing real economic loss to investors who had purchased Ability common stock during the Class Period.

44.    The declines in the price of Ability common stock after the corrective disclosures came to light were a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market.  The timing and magnitude of the price declines in Ability common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.

45.    The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of Ability common stock and the subsequent significant decline in the value of Ability common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

**Applicability of Presumption of Reliance:**
**Fraud on the Market Doctrine**

46.    At all relevant times, the market for Ability common stock was an efficient market for the following reasons, among others:

(a)    Ability common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient, electronic stock market;

(b)    as a regulated issuer, Ability filed periodic public reports with the SEC and the NASDAQ;

(c)    Ability regularly communicated with public investors *via* established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    Ability was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their

respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

47.    As a result of the foregoing, the market for Ability common stock promptly digested current information regarding Ability from all publicly available sources and reflected such information in the prices of the common stock.  Under these circumstances, all purchasers of Ability common stock during the Class Period suffered similar injury through their purchase of Ability common stock at artificially inflated prices and a presumption of reliance applies.

## COUNT I

### Violation of Section 10(b) of the Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

48.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.    During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

51.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Ability common stock.  Plaintiff and the Class would not have purchased Ability common stock at the prices they paid, or at all, if they had been

- 17 -

aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

52.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Ability common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.    The Individual Defendants acted as controlling persons of Ability within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of Ability, and their ownership of Ability stock, the Individual Defendants had the power and authority to cause Ability to engage in the wrongful conduct complained of herein.

55.    By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, on behalf of itself and the Class, pray for judgment as follows:

A.    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED:  May 25, 2016                    ROBBINS GELLER RUDMAN
                                        & DOWD LLP
                                        SAMUEL H. RUDMAN
                                        MARIO ALBA JR.


                                        _____/s/ Samuel H. Rudman_____
                                        SAMUEL H. RUDMAN

                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)

                                        Attorneys for Plaintiff

## CERTIFICATION OF FIRSTFIRE GLOBAL OPPORTUNITIES FUND LLC
## IN SUPPORT OF CLASS ACTION COMPLAINT

FIRSTFIRE GLOBAL OPPORTUNITIES FUND LLC ("plaintiff") declares, as to the

claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and

      has authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of the complaint at the direction

      of plaintiff's counsel or in order to participate in any private action arising under the

      federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class, including

      providing testimony at deposition and trial, if necessary.

4.    During the proposed Class Period, plaintiff executed the following transactions in the stock

      of Ability Inc.  See Attachment A:

5.    In the past three years plaintiff has not served, nor sought to serve, as a representative party

      on behalf of a class in an action filed under the federal securities laws.

6.    Plaintiff will not accept payment for serving as a representative party on behalf of a class

      beyond plaintiff's pro rata share of any recovery, except such reasonable costs and

      expenses (including lost wages) directly relating to the representation of the Class as

      ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.   Executed this 5th

day of May, 2016.

_____

FIRSTFIRE GLOBAL OPPORTUNITIES FUND LLC

## ATTACHMENT A

| Date | Action | Amount | Price |
|------|--------|--------|-------|
| December 9, 2015 | Buy | 5,000 shares | $10.09 |
| December 18, 2015 | Sell | 5,000 shares | $10.10 |
| December 21, 2015 | Sell | 81 shares | $10.09 |
| December 21, 2015 | Buy | 5,000 shares | $10.06 |
| December 30, 2015 | Buy | 500 shares | $ 0.00 |