## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE ABILITY, INC. SECURITIES LITIGATION | Case No. 16 – 3893 (VM)<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>**JURY TRIAL DEMANDED** |

Co-Lead Plaintiffs Theodore Zwicker and Ametren L.P. ("Lead Plaintiffs"), by and through their attorneys, allege the following upon information and belief, except as to those allegations concerning Lead Plaintiffs, which are alleged upon personal knowledge. Lead Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which includes: (a) review and analysis of regulatory filings made by Ability Inc. ("Ability" or the "Company"), formerly Cambridge Capital Acquisition Corporation ("Cambridge"), with the U.S. Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ability; and (c) review of other publicly available information concerning Ability.

### NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of a class consisting of all persons or entities who purchased or otherwise acquired Ability and/or Cambridge securities between September 8, 2015 and April 29, 2016 (the "Class Period"), including pursuant to the registration statement on Form S-4 filed with the SEC on November 25, 2015 ("Registration Statement"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") (the "Class").

2.      Ability is a holding company that operates through its wholly-owned subsidiaries

Ability Computer & Software Industries, Ltd., and Ability Security Systems Ltd., which provide advanced interception, geolocation and cyber intelligence tools to serve the needs of security and intelligence agencies, military forces, law enforcement agencies, and homeland security agencies worldwide.

3. The defendants are Ability Inc., Anatoly Hurgin (Ability's CEO), Avi Levin (Ability's CFO), Benjamin Gordon (Ability's former director), and BDO Ziv Haft (collectively, "Defendants").  Hurgin, Levin, and Gordon are referred to as the "Individual Defendants."

4. Ability was created through an acquisition and reorganization involving a "special purpose acquisition company" (or "SPAC").  A SPAC is a publicly traded buyout company that raises money in order to acquire a target private company, thus essentially turning the private company into a publicly traded company.  Here, according to the proxy statement and prospectus filed by Ability on December 2, 2015 ("Proxy Statement and Prospectus"), Cambridge, the SPAC, acquired Ability Computer & Software Industries Ltd. ("Ability Ltd."), and then Cambridge changed its name to "Ability Inc."  This transaction is referred to as the "Business Combination."

5. On September 8, 2015, Ability Computers & Software Industries Ltd. and Cambridge Capital Acquisition Corporation jointly issued a press release announcing the acquisition, entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION TO MERGE WITH ABILITY COMPUTERS & SOFTWARE INDUSTRIES LTD."  Therein, the entities touted Ability Computers & Software Industries Ltd.'s revenues, stating: "Ability's revenues for the six months ended June 30, 2015 rose 162% to $43.0 million from $16.4 million for the comparable period in 2014.  During this same period, net income rose at a faster rate, up 394% to $16.8 million from $3.4 million.  Ability's LTM June 30, 2015 revenue and net income were

2

$48.7 million and $17.0 million, respectively."

6.     On December 23, 2015, Cambridge Capital Acquisition Corporation announced the completion of the acquisition and the creation of Ability Inc. in a press release entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION COMPLETES BUSINESS COMBINATION WITH ABILITY COMPUTER & SOFTWARE INDUSTRIES LTD." Therein, Cambridge Capital Acquisition Corporation stated:

> **New York, NY and Tel Aviv, Israel – December 23, 2015 – Cambridge Capital Acquisition Corporation (NASDAQ: CAMB; CAMBW; CAMBU)** ("Cambridge") today announced the closing of its business combination with privately-held Ability Computer & Software Industries Ltd. ("Ability") following the receipt of stockholder approval at Cambridge's special meeting of stockholders held today in New York City.
>
> As part of the business combination, Cambridge merged with and into Cambridge Holdco Corp., Cambridge's wholly-owned subsidiary, and changed its name to "Ability Inc."
>
> Cambridge anticipates that effective with the commencement of trading on or about December 24, 2015, Ability's ordinary shares and warrants will begin trading on the NASDAQ Capital Market under the new symbols ABIL and ABILW, respectively. Cambridge's units will no longer trade.

7.     However, on May 2, 2016, Ability filed its Annual Report with the SEC on Form 20-F.  Therein, the Company disclosed that its consolidated financial statements as of December 31, 2014 and for the two years in the period then ended "have been restated to reflect correction of errors with respect to previously unrecognized commissions due to a vendor on revenues that were recognized in 2014, 2013 and 2012; improper allocation and timing of revenue recognition from connection to supportive infrastructure in multiple element sale transactions recognized in 2014, 2013 and 2012; and previously unrecognized commissions due to a third party on cost of revenues that were recognized in 2014."  The restatement included unfavorable adjustments to the Company's revenues, expenses, gross profit, net income, and operating income.

8.      On this news, Ability's stock price fell $2.42 per share, or 33%, to close at $4.90 on May 2, 2016, on unusually heavy trading volume.  By the time the first complaint in this case was originally filed on May 25, 2016, Ability's stock price had fallen to $2.74.

9.      Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company improperly accounted for vendor commissions in violation of Generally Accepted Accounting Principles ("GAAP"); (2) that, as such, the Company improperly accounted for expenses and liabilities in violation of GAAP; (3) that the Company improperly accounted for revenue in violation of GAAP; (4) that the Company disseminated inaccurate financial statements relating to fiscal years 2012 – 2015; (5) that the Company lacked adequate internal controls over financial reporting; and (6) that, as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Ability's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

10.     Defendants made these statements multiple times, but in particular they highlighted them in: (1) the Proxy Statement and Prospectus filed with the SEC on December 2, 2015; (2) the Registration Statement filed with the SEC that became effective on December 3, 2015, which incorporated the Proxy Statement and Prospectus; (3) presentations Defendants made to investors and prospective investors in anticipation of the Business Combination; and (4) Ability's December 23, 2015 Form 8-K, which incorporated by reference all of the false and misleading statements made in the Proxy Statement and Prospectus.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous

decline in the market value of the Company's securities, Lead Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j, 78t, and 78n, Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77o.

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 78aa, and 15 U.S.C. § 77v.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), 15 U.S.C. § 78aa(c)), and 15 U.S.C. § 77v(a).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this judicial district.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this judicial district.  In addition, the Company's shares are actively traded within this judicial district.

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

16.     Co-Lead Plaintiff **Ametren L.P.** ("Ametren") is an investor in Ability.  As set forth in its certification previously filed with the Court, Ametren purchased shares of Ability common stock during the Class Period and suffered damages as a result of Defendants' violations of the federal securities laws and the false and misleading statements alleged herein.

17.     Co-Lead Plaintiff **Theodore Zwicker** is an investor in Ability.  As set forth in its certification previously filed with the Court, Zwicker purchased shares of Ability common stock during the Class Period and suffered damages as a result of Defendants' violations of the federal securities laws and the false and misleading statements alleged herein.

18.     Defendant **Ability Inc.** ("Ability") is a publicly-traded corporation that sells advanced interception, monitoring, and cyber-intelligence tools and services to government agencies.  Its products and services include voice conversation interception systems for satellite and cellular networks, geo-location systems, cyber solutions, and a crime prevention solution. Ability is the result of a Business Combination involving Cambridge Capital Acquisition Corporation ("Cambridge"), its subsidiary Cambridge Holdco Corp. ("Holdco"), and Ability Computer & Software Industries, Ltd.  Ability was previously known as "Cambridge Holdco Corp.," but changed its name to Ability Inc. after a "reverse merger" with Ability Computer & Software Industries Ltd.  Ability's principal executive office is located at Yad Harutzim 14, Tel Aviv, Israel 6770007.  Ability is traded on the NASDAQ under the ticker "ABIL."

19.     Defendant **Anatoly Hurgin** is the CEO and Chairman of the Board of Directors of Ability, and has served in that position since December 23, 2015, when the Business Combination between Cambridge and Ability Computer & Software Industries Ltd. closed.  He previously served as the CEO of Ability Computer & Software Industries Ltd., beginning in 1994.  As a result of the Business Combination, Hurgin owns approximately 31.5% of the shares of Ability common stock.  Because of his central role in and intimate familiarity with Ability's business, Hurgin was responsible for and had ultimate authority over all of the statements regarding Ability made in Ability's SEC filings and the Proxy Statement and Prospectus.  Hurgin signed Ability's December 23, 2015 Form 8-K, which incorporated by reference all of the false

and misleading statements made in the Proxy Statement and Prospectus.  Hurgin signed a form consenting to be named in the Registration Statement as being and about to become a director, person performing similar functions, or partner.  He also signed Ability's May 2, 2016 Form 20-F.  He also made statements regarding Ability during investor presentations.

20.     Defendant **Avi Levin** has been the CFO of Ability since November 2015.  Levin has a corporate finance and accounting background: he is a Certified Public Accountant in the United States and Israel; previously worked at a major accounting firm, PricewaterhouseCoopers, in its technology industry practice; and has a college degree in economics and accounting from Ben-Gurion University of the Negev in Israel, as well as an MBA from New York University's Stern School of Business.  He made statements regarding Ability during investor presentations, and because of his central role in Ability, he was responsible for and had ultimate authority over the statements regarding Ability made in its SEC filings and in the Proxy Statement and Prospectus.

21.     Defendant **Benjamin Gordon** was a director of Ability and served in that position from the closing of the Business Combination between Cambridge and Ability Computer & Software Industries Ltd. until December 20, 2016.  He previously served as the CEO of Cambridge, and served as the interim CEO of Holdco prior to its combination with Ability Computer & Software Industries Ltd.  On November 21, 2016, Ability announced that Gordon would be replaced by a new board member.  Gordon has a bachelor of arts degree from Yale College and an MBA from Harvard Business School.  Gordon signed Ability's SEC filings until December 2015, including the Proxy Statement and Prospectus and the Registration Statement. He also made statements regarding Ability during investor presentations.

22.     Defendant **BDO Ziv Haft** is an accounting and consulting firm.  Its principal

office is at Amot Bituach House Bldg, B 46-48, Derech Menachem Begin Rd., Tel Aviv, Israel 6618001.  BDO Ziv Haft acted as Ability's independent registered public accounting firm and audited Ability Computer & Software Industries Ltd.'s consolidated balance sheets for 2014 and 2013.  BDO Ziv Haft was named in the Registration Statement and signed a written consent – part of the Registration Statement – to the use in the Registration Statement of its report on the consolidated financial statements of Ability Computer & Software Industries Ltd. for 2014 and 2013.

23.     Non-defendant **Cambridge Capital Acquisition Corporation** ("Cambridge") was incorporated in Delaware on October 1, 2013.  It was a publicly-traded blank check company formed to effect the Business Combination.  It merged into its wholly-owned subsidiary Cambridge Holdco Corp.

24.     Non-defendant **Cambridge Holdco Corp.** ("Holdco") was a wholly-owned subsidiary of Cambridge and was what Ability was known as before the Business Combination. It was incorporated in the Cayman Islands.

25.     Non-defendant **Ability Computer & Software Industries, Ltd.** is an Israel-based company that was founded in 1994 and owned by Anatoly Hurgin and Alexander Aurovsky.  As a result of the Business Combination, Ability Inc. is the sole owner of Ability Computer & Software Industries Ltd.

**SUBSTANTIVE ALLEGATIONS**

**Background**

26.     Ability is a holding company that operates through its wholly-owned subsidiaries Ability Computer & Software Industries Ltd., and Ability Security Systems Ltd., which provide advanced interception, geolocation and cyber intelligence tools to serve the needs of security and

8

intelligence agencies, military forces, law enforcement agencies, and homeland security agencies worldwide.

**Materially False and Misleading Statements Issued During the Class Period**

27.     On September 8, 2015, Ability Computer & Software Industries, Ltd. and Cambridge jointly issued a press release announcing the acquisition entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION TO MERGE WITH ABILITY COMPUTERS & SOFTWARE INDUSTRIES LTD."  Therein, the entities touted Ability Computers & Software Industries Ltd.'s revenues, stating: "Ability's revenues for the six months ended June 30, 2015 rose 162% to $43.0 million from $16.4 million for the comparable period in 2014.  During this same period, net income rose at a faster rate, up 394% to $16.8 million from $3.4 million. Ability's LTM June 30, 2015 revenue and net income were $48.7 million and $17.0 million, respectively."

28.     On November 27, 2015, Defendants filed the Registration Statement.  It was deemed effective on December 2, 2015.  The Registration Statement incorporated the Proxy Statement and Prospectus, which was filed on December 3, 2015.  The Proxy Statement and Prospectus invited Cambridge investors to solicit proxies to vote to approve the Business Combination at a special meeting to be held on December 22, 2015.  The record date for the special meeting was November 24, 2015.  The Proxy Statement and Prospectus also laid out certain financial data relating to the entities to be combined, including the following Ability Computers & Software Industries Ltd. income statement and balance sheet:

2239263.3

**Statement of Income Data:**

| | For the nine months ended September 30, | | For the year ended December 31, | |
|---|---|---|---|---|
| | 2015 | 2014 | 2014 | 2013 |
| | (unaudited) | | | |
| Revenues | $51,689 | $20,680 | $22,134 | $5,588 |
| Cost of revenues | 27,609 | 12,797 | 14,654 | 4,455 |
| Gross profit | 24,080 | 7,883 | 7,480 | 1,133 |
| Sales and marketing expenses | 2,420 | 2,323 | 2,387 | 665 |
| General and administrative expenses | 1,058 | 302 | 469 | 419 |
| Operating income | 20,602 | 5,258 | 4,624 | 49 |
| Finance expenses (income), net | 42 | (75) | (269) | 371 |
| Income (loss) before income taxes | 20,560 | 5,333 | 4,893 | (322) |
| Income taxes expenses (benefit) | 3,277 | 1,357 | 1,260 | (53) |
| Net and comprehensive income (loss) | 17,283 | 3,976 | 3,633 | (269) |

**Balance Sheet Data:**

| | As of September 30, 2015 | As of December 31, 2014 |
|---|---|---|
| | (unaudited) | |
| Cash | $ 16,011 | $ 10,794 |
| Total Current Assets | 26,520 | 13,698 |
| Total Assets | 27,470 | 14,455 |
| Total Current Liabilities | 13,545 | 11,720 |
| Total Non-Current Liabilities | 415 | 257 |
| Total Liabilities | 13,960 | 11,977 |
| Total Shareholders' Equity | 13,510 | 2,478 |

29.     On December 23, 2015, Cambridge Capital Acquisition Corporation announced the completion of the Business Combination and the creation of Ability Inc. in a press release entitled "CAMBRIDGE CAPITAL ACQUISITION CORPORATION COMPLETES BUSINESS COMBINATION WITH ABILITY COMPUTER & SOFTWARE INDUSTRIES LTD." Therein, Cambridge Capital Acquisition Corporation stated:

> **New York, NY and Tel Aviv, Israel – December 23, 2015 – Cambridge Capital Acquisition Corporation (NASDAQ: CAMB; CAMBW; CAMBU)** ("Cambridge") today announced the closing of its business combination with privately-held Ability Computer & Software Industries Ltd. ("Ability") following the receipt of stockholder approval at Cambridge's special meeting of stockholders held today in New York City. As part of the business combination, Cambridge merged with and into Cambridge Holdco Corp., Cambridge's wholly-owned subsidiary, and changed its name to "Ability Inc."
>
> Cambridge anticipates that effective with the commencement of trading on or

10

about December 24, 2015, Ability's ordinary shares and warrants will begin trading on the NASDAQ Capital Market under the new symbols ABIL and ABILW, respectively. Cambridge's units will no longer trade.

30.     The statements above were false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, these statements falsely represented and/or failed to disclose: (1) that the Company improperly accounted for vendor commissions in violation of Generally Accepted Accounting Principles ("GAAP"); (2) that, as such, the Company improperly accounted for expenses and liabilities in violation of GAAP; (3) that the Company improperly accounted for revenue in violation of GAAP; (4) that the Company disseminated inaccurate financial statements relating to fiscal years 2012 – 2015; (5) that the Company lacked adequate internal controls over financial reporting; and (6) that, as a result of the foregoing, the Company's financial statements, as well as Defendants' statements about Ability's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

31.     On May 2, 2016, Ability filed its Annual Report with the SEC on Form 20-F. Therein, the Company disclosed for the first time that its consolidated financial statements as of December 31, 2014 and for the two years in the period then ended "have been restated to reflect correction of errors with respect to previously unrecognized commissions due to a vendor on revenues that were recognized in 2014, 2013 and 2012; improper allocation and timing of revenue recognition from connection to supportive infrastructure in multiple element sale transactions recognized in 2014, 2013 and 2012; and previously unrecognized commissions due to a third party on cost of revenues that were recognized in 2014."  The restatement included unfavorable adjustments to the Company's revenues, expenses, gross profit, net income, and

operating income.

32.     On this news, Ability's stock price fell $2.42 per share, or 33%, to close at $4.90 on May 2, 2016, on unusually heavy trading volume.  By the time the first complaint in this case was originally filed on May 25, 2016, Ability's stock price had fallen to $2.74.

**Ability's Violations of GAAP in Its Financial Statements Filed with the SEC**

33.     These financial statements and the statements about the Company's financial results were false and misleading as described herein.  As such, financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper recording of revenue, expenses, liabilities, and other financials in violation of GAAP.

34.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  Regulation S-X, 17 C.F.R. § 210.4-01(a)(1), states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosures which would be duplicative of disclosures accompanying annual financial statements.  17 C.F.R. § 210.10-01(a).

35.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and of the following principles:

a.     the principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

b.     the principle that "financial reporting should provide information that is useful  to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

c.     the principle that "financial reporting should provide information about the economic resources of Ability, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

d.     the principle that "financial reporting should provide information about Ability's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

e.     the principle that "financial reporting should provide information about how management of Ability has discharged its stewardship responsibility to owners (stockholders) for the use of Ability resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

f.     the principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59); and

g.     the principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79).

## CLASS ACTION ALLEGATIONS

36.     Lead Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons or entities who purchased or otherwise acquired Ability and/or Cambridge securities between September 8, 2015 and April 29, 2016, including pursuant to the Registration Statement filed on November 25,

2015, seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and Sections 11 and 15 of the Securities Act.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Ability's securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Lead Plaintiffs at this time and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Millions of Ability shares were traded publicly during the Class Period on the NASDAQ.  As of December 31, 2015, Ability had 25,756,142 ordinary shares outstanding.  Record owners and other members of the Class may be identified from records maintained by Ability or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Lead Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Lead Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether statements made by Defendants to the investing public during the Class

14

Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ability; and

      c.      to what extent the members of the Class have sustained damages and the proper measure of damages.

      41.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

<strong>UNDISCLOSED ADVERSE FACTS</strong>

      42.      The market for Ability's securities was open, well-developed, and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Ability's securities traded at artificially inflated prices during the Class Period.  Lead Plaintiffs and other members of the Class purchased or otherwise acquired Ability's securities relying upon the integrity of the market price of the Company's securities and market information relating to Ability, and have been damaged thereby.

      43.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ability's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Ability's business, operations, and prospects as alleged herein.

15

44.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Lead Plaintiffs and other members of the Class.   As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ability's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Lead Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

45.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Lead Plaintiffs and the Class.

46.     During the Class Period, Lead Plaintiffs and the Class purchased or acquired Ability's securities at artificially inflated prices and were damaged thereby.   The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

47.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Ability, and their control over, and/or receipt and/or modification of, Ability's allegedly materially misleading misstatements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Ability, participated in the fraudulent scheme alleged herein.

### APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

48.     The market for Ability's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose alleged herein, Ability's securities traded at artificially inflated prices during the Class Period.  On January 4, 2016, the Company's stock closed at a Class Period high of $10.16 per share.  Lead Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ability's securities and market information relating to Ability, and have been damaged thereby.

49.     During the Class Period, the artificial inflation of Ability's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint, causing the damages sustained by Lead Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ability's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Ability and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of

17

the Company's stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Lead Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

50.     At all relevant times, the market for Ability's securities was an efficient market for the following reasons, among others:

a.     Ability's stock met the requirements for listing, and was listed and actively traded on, the NASDAQ, a highly efficient and automated market;

b.     As a regulated issuer, Ability filed periodic public reports with the SEC and/or the NASDAQ;

c.     Ability regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d.     Ability was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

51.     As a result of the foregoing, the market for Ability's securities promptly digested current information regarding Ability from all publicly available sources and reflected such information in Ability's stock price.  Under these circumstances, all purchasers of Ability's securities during the Class Period suffered similar injury through their purchase of Ability's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ability who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

53.     Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

54.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged herein; and (ii) cause Lead Plaintiffs and other members of the Class to purchase Ability's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each

of them, took the actions set forth herein.

55.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ability's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

56.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ability's financial well-being and prospects, as specified herein.

57.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ability's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ability and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

58.     Each of the Defendants' primary liability, and controlling person liability, arises

from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

59.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ability's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

60.     As a result of the dissemination of the materially false and/or misleading

information and/or failure to disclose material facts, as set forth above, the market price of Ability's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities traded, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Lead Plaintiffs and the other members of the Class acquired Ability's securities during the Class Period at artificially high prices and were damaged thereby.

61.     At the time of said misrepresentations and/or omissions, Lead Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Lead Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Ability was experiencing, which were not disclosed by Defendants, Lead Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Ability securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

63.     As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of the Exchange Act**
**Against Defendants Hurgin, Levin, and Gordon**

64.     Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of Ability within the meaning of Section 20(a) of the Exchange Act as alleged herein, and were culpable participants in Ability's fraud.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Lead Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Lead Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

67.     As set forth above, Ability and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Lead Plaintiffs and other members of the Class suffered damages in

2239263.3

connection with their purchases of the Company's securities during the Class Period.

**THIRD CLAIM**
**Violation of Section 11 of the Securities Act**
**Against Defendants Ability, Hurgin, Gordon, and BDO Ziv Haft**

68.     Lead Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein only to the extent, however, that such allegations do not allege fraud, scienter or the intent of the Defendants to defraud Lead Plaintiffs or members of the Class.  This Claim is predicated upon Defendants' strict liability for material misstatements and omissions in the Registration Statement.  This claim is brought pursuant to Section 11 of the Securities Act, on behalf of the Class, against Defendants Ability Inc., Anatoly Hurgin, Avi Levin, Benjamin Gordon, and BDO Ziv Haft.

69.     This claim is not based on and does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  For purposes of asserting this claim under the Securities Act, Lead Plaintiffs do not allege that Defendants acted with scienter or fraudulent intent.  Lead Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the Securities Act.

70.     The Registration Statement, which incorporated the materially false Proxy Statement and Prospectus, was materially inaccurate, contained untrue statements of material facts, and omitted to state material facts required to be stated therein.

71.     The Defendants named in this claim are strictly liable to Lead Plaintiffs and members of the Class.  Lead Plaintiffs and members of the Class suffered significant losses as a result of Defendants' materially false statements and omissions of material fact in the Registration Statement.

72.     Defendant Benjamin Gordon signed the Registration Statement.

73.     Defendant BDO Ziv Haft consented with its signature to the use in the Registration Statement of its report on the consolidated financial statements of Ability Computer & Software Industries Ltd. as of December 31, 2014 and 2013.  It was the accountant/audit firm that prepared or certified the financial statements in the Registration Statement.  The false and misleading statements alleged above were in the parts of the Registration Statement attributed to BDO Ziv Haft.

74.     Defendant Anatoly Hurgin signed a form consenting to be named in the Registration Statement as being and about to become a director, person performing similar functions, or partner.

75.     The Defendants named in this claim owed Lead Plaintiffs and other members of the Class the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement at the time they became effective to ensure that such statements were true and correct and that there was no omission of material facts required to be stated therein.

76.     Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Registration Statement were true and without omissions of any material facts.  Accordingly, Defendants acted negligently and are therefore liable to Lead Plaintiffs and all other persons who purchased or otherwise acquired shares sold pursuant to the Registration Statement.  As such, the Defendants are liable to the Class.

77.     The Defendants named in this claim issued and disseminated, caused to be issued and disseminated, and participated in the issuance and dissemination of material misstatements to the investing public which were contained in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the facts set forth above.

78.     By reason of the conduct alleged herein, each of the Defendants named in this claim violated Section 11 of the Securities Act.

79.     Lead Plaintiffs and members of the Class acquired shares pursuant and/or traceable to the Registration Statement.  All of the Ability shares in the market are traceable to a single Registration Statement.  There has been no prior or subsequent offering.

80.     At the time they obtained their shares, Lead Plaintiffs and members of the Class did so without knowledge of the facts concerning the misstatements or omissions alleged herein.

81.     This claim is brought within one year after discovery of the untrue statements and omissions in and from the Registration Statement which should have been made through the exercise of reasonable diligence, and within three years of the effective date of the Registration Statement.

82.     Lead Plaintiffs and members of the Class have sustained damages.  The value of their shares has declined substantially, subsequent to, and due to, the violations of the Defendants named in this claim.    By the time the first complaint in this case was originally filed on May 25, 2016, Ability's stock price had fallen to $2.74.

83.     By virtue of the foregoing, Lead Plaintiffs and the other members of the Class are entitled to damages under Section 11, as measured by the provisions of Section 11(e), jointly and severally from each of the Defendants named in this claim.

### FOURTH CLAIM
### Violation of Section 15 of the Securities Act
### Against Defendants Hurgin, Levin, and Gordon

84.     Lead Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

85.     This claim is asserted against Defendants Anatoly Hurgin, Avi Levin, and

Benjamin Gordon, and is based upon Section 15 of the Securities Act.

86.     This claim is not based on and does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this claim.  For purposes of asserting this claim under the Securities Act, Lead Plaintiffs do not allege that Defendants acted with scienter or fraudulent intent.  Lead Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this claim is based solely on claims of strict liability and/or negligence under the Securities Act.

87.     Defendants, by virtue of their control, ownership, offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Ability within the meaning of Section 15 of the Securities Act.  Defendants had the power and influence and exercised the same to cause Ability to engage in the acts described herein.

88.     Defendants at all relevant times participated in the operation and management of Ability, and conducted and participated, directly and indirectly, in the conduct of Ability's business affairs.  As officers and directors of a publicly-owned company, Defendants had a duty to disseminate accurate and truthful information with respect to Ability's financial condition. Because of their positions of control and authority as officers and directors of Ability, Defendants were able to, and did, control the contents of the Registration Statement, which contained materially untrue statements, among other things.

89.     Defendants' control, ownership, and positions made them privy to and provided them with knowledge of the material facts concealed from Lead Plaintiffs and members of the Class.

90.     By reason of the aforementioned conduct, Defendants are liable under Section 15

of the Securities Act, jointly and severally, to Lead Plaintiffs and the other members of the Class who purchased or acquired shares pursuant to the Registration Statement.  As a direct and proximate result of the conduct of Defendants, Lead Plaintiffs and the other members of the Class suffered damages in connection with their purchase or acquisition of shares pursuant to the Registration Statement.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs pray for relief and judgment, as follows:

a.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.      Awarding compensatory damages in favor of Lead Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.      Awarding Lead Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Lead Plaintiffs hereby demand a trial by jury.

*/ s / S. Douglas Bunch*

Dated:  April 28, 2017

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Daniel S. Sommers
S. Douglas Bunch
Elizabeth A. Aniskevich
Adam H. Farra
1100 New York Avenue, N.W. / Fifth Floor
Washington, D.C. 20005
Phone: (202) 589-2281
Fax:    (202) 408-4699
dsommers@cohenmilstein.com

dbunch@cohenmilstein.com
eaniskevich@cohenmilstein.com
afarra@cohenmilstein.com

**GLANCY PRONGAY & MURRAY LLP**
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Phone: (212) 682-5340
Fax:     (212) 884-0988
lportnoy@glancylaw.com

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Phone: (310) 201-9150
Fax:     (310) 201-9160

*Co-Lead Counsel for Co-Lead Plaintiffs and the Class*