**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ABILITY INC. SECURITIES LITIGATION | CASE NO. 1:16-cv-03893 (VM) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF**
**SETTLEMENT AND PLAN OF ALLOCATION**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................................. 3

    A.    The Settlement Is Entitled to a Presumption of Fairness Because It Is the
          Product of Arm's-Length Negotiations Among Experienced Counsel ................. 4

    B.    The Settlement Is Substantively Fair, Reasonable, and Adequate Under the
          *Grinnell* Factors ....................................................................................... 6

          1.    Continued Litigation Would Be Complex, Expensive, and
                Protracted ......................................................................................... 6

          2.    The Lack of Objections and/or Opt-Outs Supports Final Approval ......... 10

          3.    Plaintiffs Had Sufficient Information to Make Informed Decisions
                About Settling This Case ..................................................................... 11

          4.    Plaintiffs Faced Major Risks in Establishing Liability and
                Damages ........................................................................................... 13

                a.    Risks of Establishing Liability ................................................. 14

                b.    Risks of Establishing Loss Causation and Damages ................... 15

          5.    Risks of Maintaining Class Action Status Through Trial ....................... 17

          6.    The Ability of Defendants to Withstand Greater Judgment .................... 17

          7.    The Settlement Amount Is in the Range of Reasonableness in Light
                of the Best Possible Recovery and All the Attendant Risks of
                Litigation ......................................................................................... 18

    C.    The Plan of Allocation Should Be Approved ...................................... 20

    D.    Notice to the Class Satisfied All the Requirements of Rule 23 and Due
          Process ....................................................................................... 22

    E.    Final Certification of the Class .......................................................... 24

III.  CONCLUSION ................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ........................................................................ 22, 23

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).................................................................. 6, 13, 18, 19

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).............. 7, 19, 24

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)............................................................................ 4, 5, 6

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................... 15

*Fishoff v. Coty Inc.*,
   No. 09 Civ. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010)...................... 14

*Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........... 5

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ...................................................................... 6

*Hicks v. Morgan Stanley & Co.*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).................. 9

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ. 1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004)................................. 9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ......................................................................... 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 13, 24

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ. 1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004)................................. 9

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................... *passim*

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........... *passim*

*In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................... *passim*

*In re Blech Sec. Litig.*,
    No. 94 Civ. 7696 (RWS), 2000 WL 661680 (S.D.N.Y. May 19, 2000) ................................. 20

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ................................................................................. 4

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) .......................................................................... 6

*In re Datatec Sys. Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...................................... 21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................... 19

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ................................................................ *passim*

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................ *passim*

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................. 3, 16, 17, 21

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) .............................. 11, 19

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    No. 94 Civ. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ...................................... 22

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................. 3

*In re Sony Corp. SXRD*,
    448 F. App'x 85 (2d Cir. 2011) .................................................................................. 6

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ................................... 13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................... 4, 5, 16

*In re Top Tankers, Inc. Sec. Litig.*,
  No. 06 CIV. 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ............................... 19

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
  No. 15-CV-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016) .................................... 5

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................... 13, 16, 18, 20

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015) ............................................................................ 8, 15

*Priceline.com, Inc. Sec. Litig.*,
  No. 3:00-CV-1884 (AVC), 2007 WL 2115592 (D. Conn. July 20, 2007) ............................... 5

*Scientific Atl., Inc. Sec. Litig.*,
  754 F. Supp. 2d 1339 (N.D. Ga. 2010) .................................................................. 15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................... 9

*Van Oss v. New York*,
  No. 10 Civ. 7524 (SAS), 2012 WL 2550959 (S.D.N.Y. July 2, 2012) ..................................... 5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................. *passim*

## STATUTES

15 U.S.C. § 78u-4(a)(7) ........................................................................... 23

28 U.S.C. § 1711 ................................................................................. 11

## RULES

Fed. R. Civ. P. 23 ................................................................... *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court-appointed co-Lead Plaintiffs, Amatrine L.P. ("Amatrine")[1] and Theodore Zwicker ("Zwicker") (collectively, "Lead Plaintiffs" or the "Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement resolving all claims asserted in this securities class action (the "Action") and for approval of the proposed plan of allocation of the proceeds of the Settlement (the "Plan of Allocation").[2]

## I.    **INTRODUCTION**[3]

Subject to this Court's approval, Plaintiffs have agreed to settle all claims in this Action in exchange for a cash payment of $3 million.  This is an excellent result for the Class given the many risks inherent in this litigation and the strained financial condition of Ability.

The Settlement is the product of Plaintiffs' extensive investigation concerning the claims asserted in the Action and vigorous prosecution of the litigation on behalf of the Class.  By the time the agreement to settle had been reached, Lead Counsel had, among other things: (i) conducted an extensive investigation of the claims asserted in the Action, including a detailed review of SEC filings, court filings, conference call transcripts, press releases, analyst reports,

---

[1]  A different spelling of Amatrine L.P.'s name (previously listed on the Court's docket as "Ametren L.P."), attributable to a difference in transliteration from Hebrew to English, has come to Lead Counsel's attention.  The legal entity itself, however, is unchanged.

[2]  Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated April 25, 2018 (the "Stipulation").  ECF No. 74-1.

[3]  The Joint Declaration of S. Douglas Bunch and Kara M. Wolke in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl."), filed herewith, is an integral part of this submission.  For the sake of brevity, the Court is respectfully referred to it for a detailed description of, among other things: the history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation for the Settlement proceeds.  All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and exhibits to, the Joint Declaration.

news reports and other public information, interviews with former Ability employees, and consultation with damages experts; (ii) researched and prepared a detailed 70-page Second Amended Class Action Complaint (the "SAC" or "Complaint") based on this investigation; and (iii) engaged in a mediation process overseen by a highly experienced third-party mediator, Robert A. Meyer, Esq. of JAMS, which involved written submissions concerning liability and damages, a full-day formal mediation session, consultations with Plaintiffs' damages consultant, and weeks of follow-up negotiations.  Plaintiffs and Lead Counsel had a thorough understanding of the strengths and weaknesses of the claims and defenses in the Action and the risks to establishing liability, damages, and collecting a judgment in this case when they negotiated the Settlement.  ¶¶ 4, 29-43.  The Settlement represents a favorable outcome of the Action for the Class and is in the best interests of the Class.  ¶ 3.

In particular, although Plaintiffs and Lead Counsel believe that the claims asserted are meritorious, they recognize the substantial challenges to establishing that Defendants acted with scienter, demonstrating loss causation, proving class-wide damages, and achieving and collecting a greater recovery.  Defendants would have vigorously contested falsity, materiality, and scienter and could have argued that Plaintiffs had not alleged any materially misleading financial statements, nor alleged facts sufficient to raise a strong inference of scienter.  Defendants could also have made credible damages and loss causation arguments that may have greatly reduced, or even eliminated, any potential recovery.  Finally, even if Plaintiffs succeeded at trial, there is a significant risk, in light of the Company's financial condition, that Ability and/or its insurer would not pay any judgment.

As explained herein, the Settlement is fair, adequate, and reasonable under the governing standards in this Circuit.  The Settlement recovered $3 million in cash from a Company facing

financial turmoil, falls well within the range of settlements in comparable securities fraud class actions, and eliminates the significant costs and risks of continuing litigation through trial and appeals.  Additionally, to date, no objections and no requests for exclusion have been received from Class Members.  ¶ 49.

For these reasons, and those set forth below, Plaintiffs and Lead Counsel believe that the Settlement is in the best interests of the Class.  In addition, the Plan of Allocation, which ties each investor's recovery to the date the securities were acquired and sold and the number acquired and sold, is a fair and reasonable method for distributing the Net Settlement Fund to the Class and warrants approval.

## II.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).[4]  Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Accordingly, public policy considerations strongly favor settlement, particularly in class actions.  *Wal-Mart*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.").  Furthermore, "[i]n evaluating the settlement of a securities class action, federal courts, including this [c]ourt, have long recognized that such litigation is notably difficult and notoriously uncertain."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *5

---

[4] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

(S.D.N.Y. Dec. 23, 2009) (same).

### A.   The Settlement Is Entitled to a Presumption of Fairness Because It Is the Product of Arm's-Length Negotiations Among Experienced Counsel

Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116).  Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to the recommendations of counsel regarding settlement, especially when negotiations are facilitated by an experienced, third-party mediator.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the parties' negotiations, with the assistance of a third-party mediator, did not commence until after Lead Counsel engaged in an extensive investigation to understand the strengths and weaknesses of the case.  Specifically, Lead Counsel thoroughly reviewed publicly available information about the Company, interviewed former Ability employees, consulted damages and loss causation experts, and prepared the detailed SAC.  ¶¶ 4, 13-19.  As part of the mediation process facilitated by Robert A. Meyer, Esq. of JAMS, the parties exchanged written statements and presentations concerning liability, damages, loss causation, and ability to pay, which informed each side of the strengths and weaknesses of their respective cases.  ¶ 23.  The parties also engaged in an all-day, in-person mediation on October 17, 2017, although no settlement was reached at the mediation.  ¶ 21.  The parties continued to negotiate for several weeks with the assistance of Mr. Meyer, who ultimately made a mediator's recommendation that the Action be settled for $3 million, which the parties accepted.  ¶ 24.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator like Mr. Meyer support the conclusion that the Settlement is fair, adequate, and reasonable.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884 (AVC), 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (approving settlement and finding that it was "ably negotiated at arms' length with the impartial participation of . . . attorney Meyer and is, therefore, entitled to a presumption of fairness and adequacy"); *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) (approving settlement negotiated with the assistance of an experienced mediator, Mr. Meyer).

Lead Counsel, who have extensive experience in prosecuting securities class actions, have concluded that the Settlement is fair, adequate, reasonable, and in the Class's best interests, and their judgment is entitled to "great weight."  *Telik*, 576 F. Supp. 2d at 576; *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

These facts strongly weigh in favor of affording the Settlement a presumption of fairness and granting final approval.  *See Van Oss v. New York*, No. 10 Civ. 7524 (SAS), 2012 WL 2550959, at *1 (S.D.N.Y. July 2, 2012) (finding "a strong presumption of fairness attaches because the Settlement was reached by experienced counsel after extensive arm's length negotiations").

5

**B.** **The Settlement Is Substantively Fair, Reasonable, and Adequate Under the *Grinnell* Factors**

The Settlement is also substantively fair, adequate, and reasonable.  It is well-established that "in this Circuit, courts examine the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors," which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Deutsche Bank*, 236 F.3d at 86.

In applying the *Grinnell* factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances."  *IMAX*, 283 F.R.D. at 189.  Notably, "when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial."  *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011).

As demonstrated below, the Settlement satisfies the criteria for approval under *Grinnell*.

**1.** **Continued Litigation Would Be Complex, Expensive, and Protracted**

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court."  *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013).  This is particularly

6

true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (quoting *In re Bear Stearns Cos. Sec., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)).

Further litigation would have required substantial additional expenditures of time and money, involving complex issues of law and fact, with a significant risk of a lower recovery. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). The subject matter of the claims and the Company's financial condition increased the complexity and expense of litigation. Plaintiffs alleged, *inter alia*, that Defendants made materially false and misleading statements in Ability's Registration Statement and December 2, 2015 Proxy Statement about the Company's key financial metrics, *i.e.*, expenses, revenue, and net income, omitted that the Company had multiple material weaknesses in its internal controls over financial reporting, and omitted that it may have violated Section 402 of the Sarbanes-Oxley Act ("SOX"). ¶¶ 15, 36. Plaintiffs also alleged that Defendants materially misstated Ability's financial results, resulting in, *inter alia*, amended financial results as of December 31, 2014, and for the two years in the period then ended, and as of June 30, and September 30 in 2015 and 2014 and for the six and nine month periods then ended, relating to the effectiveness of the Company's internal controls over financial reporting. ¶¶ 9, 15-16. The facts underlying these allegations and others at issue

would have potentially presented problems in establishing Plaintiffs' Securities and Exchange Act claims.

For example, although a restatement serves as a tacit acknowledgement of a material misstatement because under GAAP, restatements are only required to correct material accounting errors, GAAP violations alone are insufficient to state a securities fraud claim under the Exchange Act; Plaintiffs must also plead scienter.  ¶¶ 36-37.  Plaintiffs would need to prove that Defendants knew of – or recklessly disregarded – the issues related to GAAP violations, weaknesses in internal controls, and potential SOX violations at the time the Company issued the Registration Statement.  ¶ 36.  In addition, although Ability amended certain of its financial statements, the Registration Statement contained warnings regarding the Company's lack of internal controls that Defendants would have argued rendered related misstatements immaterial. Finally, substantial expert testimony would be necessary regarding the appropriate amount of damages.  ¶¶ 38, 40.  Indeed, Plaintiffs' Securities Act claims would likely have required substantial expert testimony at the summary judgment phase in response to Defendants' due diligence defense, BDO's argument that it was not liable for statements of opinion under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1326-29 (2015), and Defendants' potential negative causation defenses.  ¶¶ 35, 39.

In the absence of the Settlement, the Action would have likely required resolution of motions to dismiss, extensive fact and expert discovery, a class certification motion, summary judgment motions, *Daubert* motions, a trial, post-trial motion practice, and post-trial appeals. Given the number of Defendants, as well as other issues, Plaintiffs anticipated significant discovery and procedural issues at considerable expense.  Throughout each phase of litigation, Plaintiffs would undoubtedly have faced a robust defense from Defendants' experienced counsel.

*See In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues "likely to be litigated aggressively, at substantial expense to all parties"). Thus, it cannot be disputed that continued litigation would have been complex, expensive, and time-consuming.

Moreover, even if Plaintiffs could recover an equally large judgment after a trial *and* recover from Defendants – both of which are far from certain given the risks discussed herein – the additional delay through post-trial motions and the appellate process could deny the Class any recovery for years, further reducing its value. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

Significantly, as discussed more fully in Section II.B.6, *infra*, due to Ability's deteriorating financial condition and both the special defenses to be asserted by BDO and the inherent challenges in recovering funds from the Individual Defendants, insurance coverage was the only likely, albeit uncertain, source of recovery. Moreover, the limited available insurance would have been reduced or even completely exhausted by defense costs if this Action had continued. Accordingly, there is a very significant risk that further litigation might yield a smaller recovery – or no recovery at all – several years in the future. *See, e.g.*, *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (protracted

litigation could force a company experiencing financial difficulties into bankruptcy and foreclose significant recovery for the class).

The Settlement eliminates the expense and delay of continued litigation, the depletion of existing insurance coverage, and the risk that the Class could receive no recovery.

### 2.    The Lack of Objections and/or Opt-Outs Supports Final Approval

The reaction of the class to a proposed settlement is a significant factor to weigh in considering its fairness and adequacy.  *See Bear Stearns*, 909 F. Supp. 2d at 266-67.  The absence of valid objections and low number of requests for exclusion provides evidence of class members' approval of the terms of the Settlement.  *See Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Am. Bank Note*, 127 F. Supp. 2d at 425 (noting "the lack of objections may well evidence the fairness of the Settlement").

Pursuant to the Preliminary Approval Order (ECF No. 84), the Court-appointed Claims Administrator, Kurtzman Carson Consultants ("KCC"), began mailing copies of the Postcard Notice on June 15, 2018.  Ex. 3 (Declaration of Justin Hughes Regarding: (A) Mailing of the Notice and Proof of Claim Form; (B) Publication of the Summary Notice; (C) Establishment of the Telephone Hotline; (D) Establishment of the Settlement Website; and (E) Report on Requests for Exclusion Received to Date ("Hughes Decl.")) at ¶¶ 2-7.  As of August 8, 2018, KCC had disseminated a total of 1,485 Postcard Notices to potential members of the Class and nominees. *See id.*, ¶ 7.  In addition, the Summary Notice was published in *Investor's Business Daily* on June 18, 2018 and transmitted over *PR Newswire* on June 18, 2018.  *See id.*, ¶ 8.  The detailed Internet Long Form Notice contains a description of the Action, the Settlement, and information about Class Members' rights to participate in the Settlement by submitting a Proof of Claim; to object to the Settlement, the Plan of Allocation, or Lead Counsel's motion for attorneys' fees and

expenses; or to request exclusion from the Class.  Although the Court's deadline for members of the Class to object or exclude themselves from the Class – August 24, 2018 – has not yet passed, to date, no objections and no requests for exclusion have been received.  ¶ 49; Hughes Decl. at ¶ 11.[5]  Moreover, counsel for Defendants has confirmed that, in accordance with the Stipulation, Defendants served upon the appropriate state official of each state and the Attorney General of the United States notice of the action in compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711, *et seq*.  ¶ 72.  The CAFA notice provided federal and state officials an opportunity to intervene or otherwise take action in response to the Settlement.  Those federal and state officials have not raised any concerns with the Settlement.  *Id.*

The Class's favorable reaction supports approving the Settlement.  *See Bear Stearns*, 909 F. Supp. 2d at 267 ("Given the absence of significant exclusion or objection—the rate of exclusion is 5.1% and the rate of objection is less than 1%—this factor weighs strongly in favor of approval."); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *15 (S.D.N.Y. Feb. 1, 2007) (finding that 34 requests for exclusion in response to the mailing of nearly 400,000 notices was a "minimal" number that "militates in favor of approving the settlement as being fair, adequate, and reasonable").

### 3.    Plaintiffs Had Sufficient Information to Make Informed Decisions About Settling This Case

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of

---

[5] Lead Counsel will file reply papers on September 7, 2018 that will update the Court on the number of requests for exclusion received and respond to any objections that may be received.

plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. To satisfy this factor, the parties "need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the settlement." *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

By the time the parties agreed to settle, Plaintiffs and Lead Counsel understood the strengths and weaknesses of the claims and defenses asserted, and could make informed appraisals regarding the chances of success.  Lead Counsel expended significant time and resources analyzing and litigating the legal and factual issues in the Action.  Among other things, Lead Counsel: (i) thoroughly reviewed publicly available information concerning Ability, including SEC filings, analyst reports, investor presentations, and financial press; (ii) interviewed former Ability employees with knowledge of the Company's practices; and (iii) prepared the detailed 70-page SAC based on this investigation.  ¶¶ 4, 13-19.  Lead Counsel also engaged in an extensive mediation process under the auspices of Mr. Meyer, including, *inter alia*, the exchange of detailed mediation statements addressing liability, expert damage analyses, loss causation, and ability to pay; a full-day mediation; and substantial additional follow-up negotiations to reach a memorandum of understanding, and subsequently the Stipulation, setting forth the parties' agreement to settle and release all claims referenced therein for a cash payment of $3 million. ¶¶ 21-25.

In light of these efforts, Plaintiffs and Lead Counsel had a strong understanding of the claims and defenses asserted and the significant risks to establishing liability, proving damages,

and collecting a judgment in order to intelligently negotiate the Settlement.  *See AOL Time Warner*, 2006 WL 903236, at *10; *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (where "no merits discovery occurred," counsel that had conducted their own investigation, engaged in detailed briefing, and conducted targeted due diligence discovery were "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *7 (S.D.N.Y. May 1, 2008) ("[a]lthough the parties did not engage in extensive formal discovery, such efforts are not required for the Settlement to be adequate, so long as the parties conducted sufficient discovery to understand their claims and negotiate settlement terms").

### 4.    Plaintiffs Faced Major Risks in Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117.  Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same).  In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002).  Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

### a.      Risks of Establishing Liability

"The difficulty of establishing liability is a common risk of securities litigation," particularly where, as here, Defendants had credible defenses. *AOL Time Warner*, 2006 WL 903236, at *11. Although Plaintiffs believe they adequately alleged falsity, materiality, and scienter, they recognize the difficulties of proving these elements at trial. *See id.* (recognizing that "avoiding dismissal at the pleading stage does not guarantee that scienter will be adequately proven at trial"). Indeed, scienter is often considered "the most difficult and controversial aspect of a securities fraud claim." *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

Even though Ability conducted an internal investigation into the GAAP violations and its executives' legal and regulatory violations and admitted that there were several material weaknesses in Ability's internal controls over financial reporting – resulting in the Company's restatement – and that the Company likely violated the enhanced conflict of interest provision in Section 402 of SOX, establishing that Defendants possessed the requisite intent to defraud investors and/or inflate Ability's stock price as required by the Exchange Act would have been a significant hurdle. ¶¶ 36-37. Indeed, Defendants would have likely argued that the Registration Statement adequately warned investors about issues related to its internal controls and SOX compliance. ¶ 36. Defendants would also have likely contended that a restatement, even a substantial one, is not sufficient to establish scienter. ¶ 37. Although Plaintiffs would argue that the nature and magnitude of the restatement, in addition to an SEC investigation, the Individual Defendants' financial motives, and the resignation of 11 board members supported materiality and an inference of scienter, there is a substantial risk that the Court or a jury would accept Defendants' arguments. *Id.*

Defendants would have also raised a number of arguments and defenses to Plaintiffs'

14

Securities Act claims.  ¶ 35.  Defendants would have likely argued that they were subject to a due diligence defense and claimed that they did not have contemporaneous knowledge of the extent of the weaknesses in internal controls and the potential conflict of interest violations at the time the Registration Statement and Prospectus were issued.  BDO would have argued its statements were inactionable statements of opinion under *Omnicare*, 135 S. Ct. at 1326-29.  *Id.* Whether Plaintiffs would have prevailed in response to these arguments at the pleading stage, summary judgment, and trial was far from certain.  *Id.*

### b.    Risks of Establishing Loss Causation and Damages

If the litigation had proceeded, Plaintiffs would have encountered significant causation and damages defenses.  Plaintiffs must establish that it was the revelation of Defendants' misrepresentations or omissions which caused Plaintiffs to incur a loss, and not non-fraud-related business or macroeconomic factors.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").  Disentangling the market's reaction to various pieces of news is a "complicated concept, both factually and legally."  *Global Crossing*, 225 F.R.D. at 459.  Accordingly, the "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion' about the difference between the purchase price and the stock's 'true' value absent the alleged fraud."  *Id.*

The parties held extremely disparate views with respect to damages, and Defendants' challenges to loss causation and damages could pose a serious risk to the Class at the pleading stage, summary judgment, trial, and on appeal.  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (reversing plaintiffs' jury verdict for failure to prove loss causation); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-

related and non-fraud-related portions of stock decline).  Specifically, Defendants would have likely asserted that a substantial portion of the decline was due to the disclosure of other information unrelated to the alleged fraud.  ¶ 39.

In complex securities cases, it is axiomatic that the parties would rely on expert testimony to assist the jury in determining damages.  *See Global Crossing*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").  Although Plaintiffs would argue that the stock price declines were attributable to the disclosure and corrections of the alleged misstatements and omissions and would present expert testimony addressing loss causation and damages, there is little doubt that Defendants would proffer their own expert to offer contrary testimony with respect to all of the price declines.  *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts.").  In such a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found" by the jury.  *Telik*, 576 F. Supp. 2d at 579-80.

Therefore, even if liability were established at trial, "a jury could find that damages were only a fraction of the amount that plaintiffs contend" because "[a] jury could be swayed by experts for the Defendants, who would minimize the amount of Plaintiffs' losses."  *Del Global*, 186 F. Supp. 2d at 365.  If a jury were to accept Defendants' arguments, damages in this case could be greatly reduced or even eliminated.  *Marsh & McLennan*, 2009 WL 5178546, at *6 ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").  As a result, "the risks faced by the securities plaintiffs in establishing damages are substantial, and this factor

favors approving the settlement." *Global Crossing*, 225 F.R.D. at 459.

### 5. Risks of Maintaining Class Action Status Through Trial

Although class certification had not yet been briefed in this case, Defendants would undoubtedly have raised vigorous challenges to class certification, and such disputes "could well devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268.  If a class were to be certified, Defendants could move to decertify the class at any time. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage.").  Here, "the uncertainty surrounding class certification supports approval of the Settlement," *Marsh & McLennan*, 2009 WL 5178546, at *6, because "even the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *12.

### 6. The Ability of Defendants to Withstand Greater Judgment

Even if Plaintiffs were able to overcome the significant risks described above and prevail at trial, they would still face the very real risk that Defendants would be unable to satisfy any judgment obtained due to Ability's weak financial condition.   Ability's financial condition deteriorated significantly since this Action commenced in May 2016.  Indeed, on May 16, 2017, Ability filed its Form 20-F for the fiscal year ended December 31, 2016, stating in relevant part:

> *Due to the significant decline in revenues and an increase in legal and professional services fees, the Company has suffered losses from operations, and has a net capital deficiency that, along with other matters, raises a substantial doubt about its ability to continue as a going concern.*

(emphasis supplied); *see also* ¶ 30.

Moreover, by the time the parties began discussing settlement, Ability had a market capitalization of only approximately $18 million and constrained cash resources. ¶ 31. Ability

continued to face financial difficulties that raised doubt about its ability to continue as a going concern.

It is clear from Ability's public filings and Plaintiffs' due diligence that Ability's insurance coverage was the only likely, even if uncertain, source of recovery. *See* ¶¶ 30-33. Significantly, these insurance funds would be heavily reduced by defense costs of this litigation, as well two other actions. ¶ 33. Courts have recognized that "[t]his factor typically weighs in favor of settlement where a greater judgment would put the defendant at risk of bankruptcy or other severe economic hardship." *AOL Time Warner*, 2006 WL 903236, at *12; *see also Global Crossing*, 225 F.R.D. at 460 (since the companies had filed for bankruptcy, "without the proposed settlement, class members might well receive far less than the settlement would provide to them, even if they could prevail on their claims"); *Del Global*, 186 F. Supp. 2d at 365 (in light of the company's "dire financial condition, it is unlikely that the [c]ompany could withstand a substantial judgment," making a greater recovery than the settlement difficult); *Am. Bank Note*, 127 F. Supp. 2d at 427 (noting the "serious question as to the ability of the Defendants to withstand a greater judgment" because the company's financial condition had substantially weakened at the time of settlement discussions, and its likelihood of filing for bankruptcy increased with the passage of time). The very significant risk here that continued litigation would yield a smaller recovery – or no recovery at all – several years in the future weighs heavily in favor of the Settlement.

> **7.**     **The Settlement Amount Is in the Range of Reasonableness in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the

proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held that "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Plaintiffs submit that the $3 million settlement is well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation, particularly Defendants' ability to pay. If Plaintiffs overcame all the obstacles to establishing liability noted above, the realistic maximum recoverable damages at trial would be approximately $19 million. ¶ 43. Under that scenario, the $3 million settlement represents more than 15% of the maximum damages. *Id.* This is an extremely favorable outcome. *See City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (finding settlement representing a recovery in the range of approximately 9.2% to 21% of estimated damages falls well within the range of possible approval) (citing cases); *In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *6 (S.D.N.Y. July 31, 2008) (finding settlement representing approximately 10.8% of estimated damages of $13 million to be within the range of reasonableness) (citing cases); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (finding settlement representing recovery of approximately 6.25% of estimated damages to be "at the higher end of

the range of reasonableness of recovery in class action securities litigations"); *see also* Ex. 7, NERA 2017 REVIEW, at 37, Fig. 28 (the median ratio of settlement amounts to investment losses between 1996 and 2017 was 19.2% for cases alleging investor losses of less than $20 million); *id.* at 38, Fig. 29 (the median ratio of settlements to investor losses in 2017 was 2.6%).

Moreover, weighing "[t]he 'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full [c]lass [p]eriod alleged in the [c]omplaint as well as the ability of [d]efendants to pay the judgment." *Del Global*, 186 F. Supp. 2d at 365. This case has been pending for over two years, and could be expected to last several more years had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000). Insurance coverage would have been swiftly depleted in light of defense costs, among other reasons. Given that Ability's insurance was the only likely, albeit uncertain, source of funding to pay any judgment, and the fact that the available insurance coverage would be further eroded as the litigation continued and would also have to be split among this Action and other actions against the Company, the Court should view positively the fact that the Settlement provides for payment now without any further risk to the Class, rather than a speculative and likely lower payment years later.

In sum, the *Grinnell* factors – including Plaintiffs' well-developed understanding of the strengths and weaknesses of the case, and the significant risks, expense, and delay of further litigation – support a finding that the Settlement is fair, adequate, and reasonable.

## C.      The Plan of Allocation Should Be Approved

"When formulated by competent and experienced counsel, a plan for allocation of net

settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270 (same).  In designing a fair and rational plan, counsel may take into account "the relative strength and values of different categories of claims."  *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

The proposed Plan of Allocation is set forth in the Internet Long Form Notice posted on the Settlement website. Ex. 3, Ex. A (Internet Notice at pp. 14-17).  Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages consultant with the objective of equitably distributing the Net Settlement Fund.  The Plan of Allocation was developed based on an event study, which calculated the estimated amount of artificial inflation in the per share closing prices of Ability common stock as a result of Defendants' alleged materially false and misleading statements and omissions.  In calculating this estimated alleged artificial inflation, the damages consultant considered price changes in Ability common stock in reaction to the alleged corrective disclosure, adjusting for factors attributable to market or industry forces and the strength of the claims, as advised by Lead Counsel.  Under the Plan of Allocation, a "Recognized Loss" will be calculated for each purchase of Ability common stock for which adequate documentation is provided.  The calculation of Recognized Losses is explained in detail in the Internet Long Form Notice and incorporates several factors, including when and for what price Ability shares were purchased and sold and the estimated artificial inflation in the shares' respective prices at the time of purchase and sale, as determined by Plaintiffs' damages consultant. *See In re Datatec Sys. Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) ("plans that allocate money depending on the timing of purchases and

sales of the securities at issue are common").  The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Losses.

Lead Counsel believes that the proposed Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members who suffered losses as result of the conduct alleged in the Action, and their opinion as to allocation is entitled to "considerable weight" by the Court in deciding whether to approve the plan.  *Am. Bank Note*, 127 F. Supp. 2d at 430.  To date, no objections to the Plan of Allocation have been received, suggesting that the Class also finds the Plan of Allocation to be fair and reasonable. ¶ 49; *In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (holding that the "small number of objections to the Proposed Plan" was entitled to "substantial weight" in approving the plan).  Moreover, similar plans have repeatedly been approved by courts in this District.  *See, e.g.*, *Global Crossing*, 225 F.R.D. at 462 ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

For each of the forgoing reasons, Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and reasonable, and merits final approval from the Court.

### D.    Notice to the Class Satisfied All the Requirements of Rule 23 and Due Process

"The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  The Postcard Notice and the posting of the Internet Long Form Notice on the Settlement website satisfied Fed. R. Civ. P. 23(e)(1), which requires that notice of a settlement be "reasonable" – *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the

proceedings." *Pierson*, 607 F. App'x at 73-74.   The notices also satisfy Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Both the substance of the notices and the method of dissemination to potential members of the Class satisfy these standards.   The notice program was carried out by KCC, a nationally-recognized claims administrator.   The Internet Long Form Notice contains the information required by Fed. R. Civ. P. 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7), including: (i) an explanation of the nature of the Action and claims asserted; (ii) the definition of the Class; (iii) a description of the key terms of the Settlement, including the consideration amount and the releases to be given; (iv) the Plan of Allocation; (v) the parties' reasons for proposing the Settlement; (vi) a description of the attorneys' fees and expenses that will be sought; (vii) an explanation of Class Members' right to request exclusion from the Class and to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses; and (viii) notice of the binding effect of a judgment on Class Members.   The Internet Notice also provides instructions for submitting a Proof of Claim in order to be eligible to receive a distribution from the Net Settlement Fund, relevant deadlines, and contact information.

As discussed above, in accordance with the Preliminary Approval Order, as of August 8, 2018, KCC had mailed 1,485 copies of the Postcard Notice by first-class mail to potential members of the Class and nominees.   Hughes Decl. at ¶ 7.   KCC also caused the Summary Notice to be published in *Investor's Business Daily* on June 18, 2018 and transmitted over *PR Newswire* on June 18, 2018.   *See id.*, ¶ 8.   The Postcard Notice listed a telephone hotline and contact information for Lead Counsel and KCC.   Ex. 3, Ex. A (Postcard Notice).   KCC also established a website to provide members of the Class with information concerning the

23

Settlement, all applicable deadlines, and copies of the Internet Long Form Notice containing the Plan of Allocation, Preliminary Approval Order, the Proof of Claim, the Stipulation and Preliminary Approval Order.  Hughes Decl., ¶ 10.

Notice via first-class mail to all members of the Class who could be identified with reasonable effort, supplemented with notice in widely-circulated publications, over a newswire, and on a dedicated website, constituted "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *Advanced Battery*, 298 F.R.D. at 182-83 (individually mailed postcards and publication in *Investor's Business Daily* and over *PR Newswire* met the notice standard); *City of Providence*, 2014 WL 1883494, at *2.

### E.    Final Certification of the Class

The Court's May 18, 2018 Preliminary Approval Order certified the Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  ECF No. 84 at ¶ 3.  There have been no changes to alter the propriety of class certification for settlement purposes.  Thus, for the reasons stated in Plaintiffs' memorandum in support of preliminary approval of the Settlement (ECF No. 73 at 20-28), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Class under Rules 23(a) and (b)(3).

### III.   <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion.

Dated: August 10, 2018

**COHEN MILSTEIN SELLERS & TOLL PLLC**

        *s/ S. Douglas Bunch*
Daniel S. Sommers
S. Douglas Bunch
Elizabeth A. Aniskevich
Adam H. Farra
1100 New York Ave., N.W., Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
eaniskevich@cohenmilstein.com
afarra@cohenmilstein.com

*Counsel for Co-Lead Plaintiff Amatrine L.P. and Co-Lead Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**

        *s/ Kara M. Wolke*
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kwolke@glancylaw.com

*Counsel for Co-Lead Plaintiff Theodore Zwicker and Co-Lead Counsel for the Class*

Jacob Sabo
**LAW OFFICE OF JACOB SABO**
#3 Daniel Frisch St. / 24th Floor
Tel-Aviv, Israel 64731
Tel.:  03-7161555
Fax:  03-7161556

*Additional Attorney for Co-Lead Plaintiff Amatrine L.P.*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On August 10, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 10, 2018.


*s/ Kara M. Wolke*
Kara M. Wolke

# Mailing Information for a Case 1:16-cv-03893-VM In re Ability, Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Elizabeth Anne Aniskevich**
  eaniskevich@cohenmilstein.com

- **Stephen Douglas Bunch**
  dbunch@cohenmilstein.com,efilings@cohenmilstein.com

- **Elaine Chang**
  echang@glancylaw.com

- **John H. Eickemeyer**
  jeickemeyer@vedderprice.com,ecfnydocket@vedderprice.com,docketing-6992@ecf.pacerpro.com,john-eickemeyer-0088@ecf.pacerpro.com

- **Edward Paul Gilbert**
  egilbert@morrisoncohen.com,courtnotices@morrisoncohen.com

- **Jason P. Gottlieb**
  jgottlieb@morrisoncohen.com,courtnotices@morrisoncohen.com

- **Daniel Cahen Isaacs**
  disaacs@morrisoncohen.com,courtnotices@morrisoncohen.com

- **Scott J. Link**
  scott@linkrocklaw.com,tina@linkrocklaw.com,linda@linkrocklaw.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com,echang@glancylaw.com,JCohen@glancylaw.com

- **Kara Berard Rockenbach**
  kara@linkrocklaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Marc Brett Schlesinger**
  mschlesinger@vedderprice.com,marc-schlesinger-5894@ecf.pacerpro.com,ecfnydocket@vedderprice.com,docketing-6992@ecf.pacerpro.com

- **Daniel Stephen Sommers**
  dsommers@cohenmilstein.com,afarra@cohenmilstein.com,efilings@cohenmilstein.com

- **Kara M. Wolke**
  kwolke@glancylaw.com,info@glancylaw.com,kara-wolke-0535@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`