UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ABILITY INC. SECURITIES LITIGATION | CASE NO. 1:16-cv-03893 (VM) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S
MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
<u>REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.  FACTUAL AND PROCEDURAL HISTORY .................................................................. 2

III. ARGUMENT ...................................................................................................... 3

    A.   The Common Fund Doctrine Applies to the Settlement .......................................... 3

    B.   The Court Should Award a Reasonable Percentage of the Common Fund ............ 4

    C.   The Requested Attorneys' Fees Are Reasonable ...................................................... 6

        1.   The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method .......................................................................................... 6

        2.   The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee .................................................................................... 7

    D.   Other Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable .................................................................... 9

        1.   Time and Labor Expended Support the Requested Fee .......................... 9

        2.   The Risks of Litigation Support the Requested Fee ............................... 10

        3.   The Magnitude and Complexity of the Action Support the Requested Fee .................................................................................................. 16

        4.   The Quality of Lead Counsel's Representation Supports the Requested Fee .................................................................................................. 17

        5.   The Requested Fee in Relation to the Settlement Amount ...................... 19

        6.   Public Policy Considerations Support the Requested Fee ...................... 20

        7.   The Reaction of the Class to Date Supports the Requested Fee .............. 21

    E.   Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained .............................................................................. 21

    F.   Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4) .............................................................................................. 22

IV.  CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

<u>CASES</u>

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07 Civ. 2207(JGK), 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010)........................................ 8

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................................................................. 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................................................. 3

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................................................... 11

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............... 6, 17, 20

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................................................................................. 6, 8

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................................. 13, 14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015)................................................................................................... 14

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)............................................................................................... *passim*

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
212 F.R.D. 400 (E.D. Wis. 2002)......................................................................................... 12, 13

*Hicks v. Morgan Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)........................ 3, 6, 20

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012).............................................................................................. 15

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)............................... 19

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................. 16

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
   772 F.3d 125 (2d Cir. 2014) ........................................................................... 23

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................... 15

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................ 14

*In re Bisys Sec. Litig.*,
   No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y July 16, 2007)...................... 8

*In re Bristol-Myers Squibb Sec. Litig.*,
   361 F. Supp. 2d 229 (S.D.N.Y. 2005) .................................................................. 6

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .............................................................................. 14

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................... 20

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)........... 8, 11, 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)..................... 5, 18

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
   No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .................................. 6, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .................. *passim*

*In re Gilat Satellite Networks, Ltd.*,
   No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)....................... 23

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004).............................................................. 7, 18, 22

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000) ...................................................................... 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ............................................................... 21

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. 2009)...................................... 23

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010).................................................................................... 16

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005)............................................................................................. 6

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989)................................................................................... 7

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)............... 3, 18, 19, 24

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)............................................................................. 5

*Johnson v. Brennan*,
No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ..................... 5, 6

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03-CV-4372 (DMC), 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ......................... 16

*MacIntire v. China Media Express Holdings, Inc.*,
No. 11-cv-00804(VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015)..................... 6

*McDaniel v. Cty. of Schenectady*,
595 F.3d 411 (2d Cir. 2010)............................................................................................ 4

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ....................................................................................................... 4

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ....................................................................................................... 7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
135 S. Ct. 1318 (2015) ................................................................................................. 13

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992).................................................................................. 21

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997)..................................................................................... 14

*Savoie v. Merchs. Banks*,
  166 F.3d 456 (2d Cir. 1999) .................................................................................... 7, 8

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331 (CM)(MHD), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................... 10

*Taft v. Ackermans*,
  No. 02 Civ. 7951(PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...................................... 16

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01 Civ. 11814 (MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................. 11

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................... 4, 8, 18, 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................................... 4, 5, 7, 8

## STATUTES

15 U.S.C. § 78u-4(a)(4)22 ......................................................................................... i, 22

15 U.S.C. § 78u-4(a)(6) ................................................................................................... 5

Court-appointed Lead Counsel Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") and Glancy Prongay & Murray LLP ("GPM") (together, "Lead Counsel") respectfully request that the Court grant their motion for an award of attorneys' fees in the amount of 33.3% of the Settlement Fund,[1] or $1,000,000, plus interest earned at the same rate as the Settlement Fund.[2] Lead Counsel also seeks reimbursement of: (i) $47,538.19 in litigation expenses that Lead Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (ii) $8,750 in total costs and expenses incurred by the Court-appointed co-Lead Plaintiffs Amatrine L.P.[3] and Theodore Zwicker ("Lead Plaintiffs" or "Plaintiffs") directly related to their representation of the Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## I.  PRELIMINARY STATEMENT

The proposed Settlement, which provides for a payment of $3 million in cash in exchange for the resolution of the Action, represents an excellent result for the Class, particularly when juxtaposed against the significant hurdles that Plaintiffs would have had to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability, loss causation, and damages.  The risk of losing was very real, and it was greatly enhanced by the fact that Lead Counsel would be

---

[1] All capitalized terms used herein that are not otherwise defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement (the "Stipulation") filed with the Court on April 25, 2018.  ECF No. 74-1.

[2] The Postcard Notice and Internet Long Form Notice informed the Class that Lead Counsel would apply to the Court for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund plus interest.

[3] A different spelling of Amatrine L.P.'s name (previously listed on the Court's docket as "Ametren L.P."), attributable to a difference in transliteration from Hebrew to English, has come to Lead Counsel's attention.  The legal entity itself, however, is unchanged.

litigating against a corporate defendant represented by skilled defense counsel, under the heightened pleading standard of the PSLRA.  Moreover, even if Plaintiffs had won at trial, Ability's weak financial condition and depleting insurance coverage meant that there was a serious risk that Defendants would have been unable to pay any judgment.  There was, therefore, a strong possibility that the case would yield little or no recovery after many years of costly litigation.  Despite these risks, Lead Counsel collectively worked 2,055 hours over the course of more than two years, all on a contingency basis with no guarantee of ever being paid.

Lead Counsel believe that an attorneys' fee award of 33.3% properly reflects the many significant risks taken by Lead Counsel, as well as the excellent result achieved.  When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.  In addition, the costs and expense reimbursements requested by Plaintiffs and their counsel are likewise reasonable in amount, and such costs and expenses were necessarily incurred in the successful prosecution of the Action.  Accordingly, they too should be approved.

## II.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

The concurrently filed Joint Declaration of S. Douglas Bunch and Kara M. Wolke in Support of (I) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration" or "Joint Decl.") is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the negotiations leading to Settlement; the risks and uncertainties of continued litigation; and a description of the services

Lead Counsel provided for the benefit of the Class.[4]

## III.   ARGUMENT

### A.   The Common Fund Doctrine Applies to the Settlement

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[5] The Second Circuit has confirmed that attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

"The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007). Courts have also recognized that awards of reasonable "attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.* at *2; *see also Hicks v. Morgan Stanley, et al.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

"For the common fund [doctrine] to apply, the applicant's efforts must confer a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs

---

[4] All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in and Exhibits to the Joint Declaration.

[5] Unless otherwise noted, citations and quotations are omitted and emphasis is added.

proportionately among them, an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)).   All these elements are present here: Lead Counsel's efforts have conferred a substantial benefit ($3 million in cash) on an ascertainable class, and a fee award from the common fund will operate equitably "to shift the costs of litigation" to the benefitting group – the Class Members.  *Id*.  Accordingly, the Court should award attorneys' fees from the common fund.

**B.      The Court Should Award a Reasonable Percentage of the Common Fund**

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).   The Supreme Court has, however, suggested that in common fund cases the attorneys' fee should be determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class[.]").   Similarly, "[t]he trend in this Circuit is toward the percentage method," rather than the lodestar method.  *Wal-Mart*, 396 F.3d at 121.

"There are several reasons that courts prefer the percentage method," including that it: (i) "directly aligns the interests of the class and its counsel because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made"; (ii) is "closely aligned with market practices because it mimics the compensation system actually used by individual clients to compensate their attorneys"; (iii) "provides a powerful incentive for the efficient prosecution and early resolution

of litigation"; (iv) "discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method"; and (v) "preserves judicial resources because it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011). "In contrast, the lodestar [method] create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 121.

The percentage method also comports with the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 CM, 2007 WL 2230177, at *16 (S.D.N.Y. July 27, 2007) ("[T]he PSLRA implicitly supports the use of the percentage of the fund method."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) ("apply[ing] the percentage method" due, at least in part, to "the PSLRA's express contemplation that the percentage method will be used to calculate attorneys' fees in securities fraud class actions").

Use of the percentage method does not, however, render lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fees awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123. "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case" (*id.*), or "[t]he district courts may rely on summaries submitted by the attorneys and need not

review actual billing records" (*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005)). *See also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) (same); *Johnson*, 2011 WL 4357376, at *14-15 ("While courts still use the lodestar method as a 'cross check' when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10 (similar).

**C.    The Requested Attorneys' Fees Are Reasonable**

**1.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

The 33.3% fee requested by Lead Counsel is an appropriate fee request in this case and has been awarded in the Second Circuit in comparable securities class actions. *See, e.g., Gormley v. Magicjack Vocaltec Ltd.*, No. 16-cv-01869(VM), slip op. at 1 (S.D.N.Y. Jan. 19, 2018) (awarding 33.3% of $3.65 million settlement) (Joint Decl. Ex. 6); *MacIntire v. China Media Express Holdings, Inc.*, No. 11-cv-00804(VM), 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding 33.3% of $12 million settlement); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, No. 12-2389, 2015 WL 6971424, at *9, *11-12 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement); *City of Providence v. Aeropostale, Inc*., No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *11-*12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 Fed. Appx. 73 (2d Cir. 2015) (awarding 33% of $15 million settlement).

One of the benefits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel have developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims.  *See Wal-Mart*, 396 F.3d at 121 (one of the benefits of the percentage method is that it "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchs. Banks*, 166 F.3d 456, 461 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

In sum, Lead Counsel's request for a 33.3% attorneys' fee is appropriate given the facts of this case and is consistent with fees awarded in the Second Circuit for comparable securities class actions.

### 2. The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

A lodestar "cross-check" confirms the reasonableness of the requested fee award.  *See Goldberger*, 209 F.3d at 50.  The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[6]  Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar."  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004).  "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."  *Id.* (citing *Goldberger*, 209 F.3d at 47;

---

[6] The U.S. Supreme Court and courts in this Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest."  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).  For employees no longer at Lead Counsel's firms, their hourly billing rate as of the date of their departure has been used.

*Savoie*, 166 F.3d at 460); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where . . . counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 2,055 hours to the prosecution of this Action, resulting in a lodestar of $1,248,462.  ¶ 63.  Based on a 33.3% fee (equal to $1,000,000), Lead Counsel's lodestar of $1,248,462 yields a multiplier of 0.8.  This so-called "negative" multiplier, which reflects that the requested attorneys' fees are actually less than the value of the hours billed, is well within (indeed, far below) the range of multipliers commonly awarded in securities class actions and other complex litigation.  *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) (finding that a multiplier of 2.05 is "within a range of reasonableness for other awards that have been approved"); *Magicjack*, No. 16-cv-01869(VM), slip op. at 1 (awarding 33.3% fee representing a 2.42 multiplier) (Joint Decl. Ex. 6); *In re Bisys Sec. Litig.*, No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (that the 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (finding that a multiplier of 5.3 was "not atypical for similar fee-award cases"); *Maley*, 186 F. Supp. 2d at 371 ("[T]he *modest* multiplier of 4.65 is fair and reasonable.").  In sum, a lodestar cross-check confirms that the requested fee award is

appropriate and is within the range – and, indeed, lower than – what courts in this Circuit regularly award in class actions such as this one.  Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### D.      Other Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee Is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.  Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.      Time and Labor Expended Support the Requested Fee

The time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Joint Declaration, Lead Counsel's work on this matter included, among other things:

- conducting an extensive investigation of the claims asserted in the Action, which included a detailed review of SEC filings, press releases, analyst reports, news reports and other public information, interviews with former Ability employees, and consultation with damages experts (¶ 13);

- researching and preparing a detailed 70-page Second Amended Complaint (ECF No. 50, the "Complaint" or "SAC") (¶¶ 13-19) based on this investigation (¶ 13);

- engaging in a mediation process overseen by a highly experienced third-party mediator, Robert A. Meyer, Esq. of JAMS, which involved written submissions concerning liability and damages, a full-day formal mediation session, extensive consultations with Plaintiffs' expert on damages and loss causation issues, and weeks of follow-up negotiations (¶¶ 21-24);

- negotiating and drafting the Stipulation and related settlement documents (¶ 25);

9

- working with Plaintiffs' damages consultant to prepare the proposed Plan of Allocation (¶ 43);

- drafting the preliminary approval motion papers (¶ 25); and

- overseeing the implementation of the notice process (¶¶ 44-49).

Moreover, the legal work on this case will not end with the Court's approval of the proposed Settlement. Additional hours and resources will necessarily be expended assisting Class Members with their Proofs of Claim, responding to Class Members' inquiries, shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. *See Facebook*, 2015 WL 6971424, at *10 ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

The substantial time and effort devoted to this case by Lead Counsel to obtain the $3 million Settlement confirms that the fee request is reasonable.

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM)(MHD), 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a

10

fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).   In applying this factor, courts have repeatedly recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and that "[s]ecurities class actions such as this are 'notably difficult and notoriously uncertain.'"   *Flag Telecom*, 2010 WL 4537550, at *27.[7] This case was no different.

From the outset of this Action, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.   In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and thus funds were available to compensate staff and to cover the considerable costs that a case such as this requires.   *See Flag Telecom*, 2010 WL 4537550, at *27.   Lead Counsel received no compensation during the litigation, and they advanced and incurred $47,538.19 in expenses in prosecuting this Action for the benefit of the Class.   ¶¶ 74-84.   Had Lead Counsel not achieved the Settlement, this significant investment of time and money would have been lost.

Although Lead Counsel believe that Plaintiffs' claims are meritorious and remain confident in their ability to prove their claims and rebut Defendants' arguments, Lead Counsel also recognize that there were a number of substantial risks in the litigation from the outset and that Plaintiffs' ability to succeed at trial and obtain a substantial judgment was far from certain. As discussed below and in the Joint Declaration, there were substantial risks here with respect to

---

[7] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

establishing both liability and damages in the Action.  Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. ¶¶ 29-43;  *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

For example, although Lead Counsel believes that the Complaint adequately alleged the elements of falsity and scienter, there can be no doubt that Plaintiffs and the Class faced significant hurdles to establishing liability.  As set forth in more detail at ¶¶ 15, 34, 36 in the Joint Declaration, the core of Plaintiffs' case is that Ability made false and misleading statements and omitted facts necessary to render statements made in investor presentations and in the Company's Registration Statement and December 2, 2015 Proxy Statement not misleading. These statements were material because, among other things, they pertained to Ability's core financial information that informed investors of Ability's growth prospects and risk profile. ¶ 15.

Although Ability's restatement served as an admission that its financial statements had been materially misstated, Defendants had a strong scienter defense to Plaintiffs' Exchange Act claims.  As explained more fully at ¶¶ 36-37, 40 of the Joint Declaration, Defendants would have raised credible arguments directed at the adequacy of Plaintiffs' allegations concerning whether Defendants acted with sufficient knowledge or recklessness to prevail under the federal securities laws.  For instance, Defendants would have likely argued that Plaintiffs' confidential witness, who had left the Company over two-years prior (in 2013) to when the conduct at issue occurred, could not support allegations of knowing or reckless GAAP violations in 2015.  *Id.*  Although

Plaintiffs would have argued that the magnitude of the accounting errors, the SEC investigation, the financial motives of the Individual Defendants, and the resignations of 11 different board members supported an inference of scienter, it was not guaranteed that Plaintiffs would have prevailed at the pleading stage, let alone at summary judgment and trial, had the litigation continued. *Id.*

Indeed, Defendants would have also raised a number of arguments and defenses to Plaintiffs' Securities Act claims at both the motion to dismiss and summary judgment phases. ¶ 35. For example, Defendants would have likely argued that they were subject to a due diligence defense and claimed that they did not have contemporaneous knowledge of the extent of the weaknesses in internal controls and the potential conflict of interest violations at the time the Registration Statement and Prospectus were issued. BDO would have argued its statements were inactionable statements of opinion under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1326-29 (2015). *Id.* Whether Plaintiffs would have prevailed in response to these arguments at the pleading stage, summary judgment, and trial was far from certain.

Plaintiffs also would have faced substantial hurdles in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Although Plaintiffs would have argued that the decline in Ability's stock price, namely 33% when the truth was revealed on May 2, 2016, was attributable to Defendants' false and misleading statements, Defendants would have likely argued that Plaintiffs could not rebut evidence that a significant percentage of the stock drop was attributable to factors other than the restatement. ¶¶ 39-40. Defendants would also have likely argued that if any of

Plaintiffs' four claims were dismissed, Plaintiffs would face the significant hurdle of disaggregating damages as to their Exchange Act claims and disproving "negative causation" as to their Securities Act claims. *Id.* Simply put, the parties would have likely held extremely disparate views on loss causation and damages, and had Defendants' likely arguments been accepted in whole or part, they would have dramatically limited any potential recovery. Plaintiffs would have to incur considerable expense to pay for experts to attempt to counter these arguments, and even then, success would be far from assured, particularly as Defendants would hire their own experts to opine on their positions. *See In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."); *In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Moreover, Plaintiffs still faced the substantial burdens of a motion to dismiss, class certification motion, summary judgment motions, trial, and likely appeals – a process which could possibly extend for years and might lead to a smaller recovery, or no recovery at all. Indeed, even prevailing at trial would not have guaranteed a recovery larger than the $3 million Settlement – especially given the Company's compromised financial condition, as discussed below. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds and remanding for a new trial on these issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for

defendant); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence to support a finding of loss causation), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Finally, this case presented very real ability-to-pay issues, as Ability's financial condition deteriorated severely during the pendency of the litigation. On May 16, 2017, Ability disclosed that there was substantial doubt about its ability to continue as a going concern. ¶ 30. On June 8, 2017, the Company announced that it received notice that it was not in compliance with NASDAQ's minimum bid price requirement and could be delisted. *Id.* Ability's June 30, 2017 financials revealed that the Company only had approximately $6 million cash on hand and its market capitalization was under $18 million. ¶ 31. Indeed, Ability's stock was trading at less than $1.00/share. *Id.*

Ability's deteriorating financial position meant that its insurance coverage was the only likely source of recovery for this Action as well as the two Florida lawsuits and Israeli securities class action also pending against the Company. ¶ 33. These insurance funds – the availability of which was far from certain, as Ability's insurer had expressed an unwillingness to fund a settlement – would be reduced by defense costs if litigation continued. ¶¶ 22, 33. Any reduction of insurance funds would have been particularly pronounced given the plethora of suits the Company was concurrently litigating. *Id.* In addition, Lead Counsel believed that the Individual Defendants had insufficient funds and assets to satisfy any substantial judgment, especially in light of Ability's insurer's unwillingness to fund a settlement, and that there were significant barriers to obtaining access to whatever assets and/or funds might have been available given

Ability's and BDO's status as foreign entities.  ¶ 22.  Accordingly, there was a very significant risk that the Action might yield a small recovery – or indeed no recovery at all – following many years of hard-fought litigation.

Despite the many uncertainties regarding the outcome of the case, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses.  Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.  *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.  The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation.  *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Taft*, 2007 WL 414493, at *10; *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03-CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex").  Courts have also recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law.  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly

with respect to loss causation and the calculation of damages.  These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation.").  Such was the case here.

As noted above and in the Joint Declaration, the litigation raised a number of complex questions concerning falsity, materiality, and Defendants' scienter, as well as liability and loss causation issues that would have required extensive efforts by Lead Counsel and consultation with experts to bring to resolution.  To build the case, Lead Counsel were, among other things, required to: (i) conduct an extensive factual investigation in Israel, which included interviews with numerous former Ability employees, significant time consulting with loss causation and damages consultants, and a broad review of all publicly available information; (ii) prepare the 70-page SAC; (iii) submit written mediation statements and engage in a full-day mediation before a well-respected and inquisitive mediator concerning Plaintiffs' theories of liability, damages, loss causation, and ability to pay.  If the Action had not been settled, there would have been copious amounts of additional motion practice, including a class certification motion, summary judgment motions, and *Daubert* motions; discovery, including depositions of fact and expert witnesses; a trial; post-trial motion practice; and most likely appeals.

Accordingly, the magnitude and complexity of the Action supports the conclusion that the requested fee is fair and reasonable.  *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee.  Lead Counsel submits that the quality of its

representation is best evidenced by the quality of the result achieved.  *See Veeco*, 2007 WL 4115808, at *7; *Global Crossing*, 225 F.R.D. at 467.   Here, the Settlement provides a very favorable result for the Class in light of the serious risks of continued litigation and the Company's compromised financial condition.  *See EVCI*, 2007 WL 2230177, at *17 ("Given the Company's limited financial wherewithal and the wasting nature of its insurance policies, Lead Counsel maximized the Class's recovery."); *see also Maley*, 186 F. Supp. 2d at 373 ("[E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of [p]laintiffs' [c]lass [c]ounsel's representation [], especially given the dire financial straits of [the company]."). It also represents a significant portion, *i.e.*, more than 15%, of likely recoverable damages. ¶ 43. Lead Counsel respectfully submit that the quality of their efforts in the litigation to date, together with their substantial experience in securities class actions and commitment to this litigation, provided Lead Counsel with the leverage necessary to negotiate the Settlement.  Exs. 4A & 5A (firm resumes of Cohen Milstein and GPM); *see also* Transcript of Oral Argument at 23, *Policemen's Annuity and Benefit Fund of City of Chicago v. Bank of Am.*, No. 12-cv-2865 (KBF) (Mar. 12, 2015) (describing settlement in which Cohen Milstein served as class counsel as a "very, very good result for the plaintiffs"); Transcript of Oral Argument at 30, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 12-cv-8093 (LTS) (KNF) (May 27, 2015) (congratulating co-lead counsel, including Cohen Milstein, on an "impressive," "hard-fought settlement which is very beneficial to the members of the classes"); Transcript of Oral Argument at 9, *In re China Mobile Games & Entm't Grp., Ltd.*, No. 14-cv-4471 (KMW) (Sept. 14, 2017) (noting that GPM's high quality of representation "warrants the requested fee award" and recognizing that "Lead Counsel vigorously investigated and prosecuted the case"); Transcript of Oral Argument at 22-23, 26, *Gardner v. CNA Fin. Corp.*, No. 3:13-cv-1918 (JBA) (Feb. 28,

2017) (thanking GPM for the "efficiency and the high quality work" and finding counsel's fees were undoubtedly justified in light of the significant litigation risks).

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 Fed. Appx. 9 (2d Cir. 2008). Here, Defendants were represented by Morrison Cohen LLP, Kobre & Kim LLP, Fleischman Law Firm, Link & Rockenbach, PA, and Vedder Price P.C., all of which are accomplished law firms that vigorously represented the interests of their clients throughout this Action. ¶ 66. Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action enabled Lead Counsel to achieve the favorable Settlement. Consequently, this factor militates in favor of the requested fee.

### 5.    The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Sec. III.C.1 above, the requested 33.3% fee is well

within the range of percentage fees that courts in the Second Circuit have awarded in comparable cases.  Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.       Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."  *Maley*, 186 F. Supp. 2d at 373.  This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors.  "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."  *Flag Telecom*, 2010 WL 4537550, at *29.  "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them.  This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved."  *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks*, 2005 WL 2757792, at *9 ("Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices[,] . . . [but] [s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").  Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request.  *See In re China Sunergy Sec. Litig.*, No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("The Court finds that public policy

supports granting attorneys' fees that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC.").

### 7.    The Reaction of the Class to Date Supports the Requested Fee

The overwhelmingly positive reaction of the Class to date also supports the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *29 ("[N]umerous courts have noted that the lack of objection from members of the class is one of the most important factors in determining the reasonableness of a requested fee.").   Through August 8, 2018, the Claims Administrator had disseminated the Postcard Notice to 1,485 potential Class Members and their nominees informing them, among other things, that Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund.   Although the time to object does not expire until August 24, 2018, to date, not a single objection has been received.   The lack of objections is "strong evidence" of the reasonableness of the fee request. *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992).[8]

### E.    Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel also request reimbursement of $47,538.19 in expenses incurred while prosecuting the Action.[9]   In support of this request, Lead Counsel have submitted separate declarations attesting to the accuracy of these expenses, which are properly recovered by counsel.   *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well-accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y.

---

[8] Should any objections be received, Lead Counsel will address them in their reply papers.

[9] Lead Counsel's request for reimbursement includes anticipated expenses associated with travel to and from the Settlement Hearing.

2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").   A significant portion of the expenses in this case were incurred for professional services rendered by Plaintiffs' consultants and the mediator, and the remaining expenses are attributable to the costs of legal and factual research, travel, and other incidental expenses incurred during the course of the litigation.   ¶¶ 74-81; Exs. 4-5.   These expenses were critical to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities class action.   As such, they should be reimbursed.   *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys.   For this reason, they are properly chargeable to the [s]ettlement fund.").   Additionally, no objections to the expense request have been received, and the amount requested is below the $100,000 limit disclosed in the Internet Long Form Notice.   Hughes Decl. Ex. 3, Exhibit A (Internet Long Form Notice).   Accordingly, Lead Counsel respectfully request payment for these expenses.

### F.   Plaintiffs Should Be Awarded Their Reasonable Costs and Expenses Under 15 U.S.C. § 78u-4(a)(4)

In connection with their request for reimbursement of litigation expenses, Lead Counsel also seeks reimbursement of $3,750 for Amatrine and $5,000 for Zwicker, for a total of $8,750 in costs and expenses incurred by Plaintiffs.   The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class."   15 U.S.C. § 78u-4(a)(4).

Here, Lead Plaintiffs dedicated a significant amount of time to the successful prosecution of this Action by, among other things: receiving periodic status reports from Lead Counsel regarding case developments; participating in regular discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement; reviewing all significant pleadings and briefs filed in the Action; consulting with Lead Counsel regarding the settlement negotiations; and evaluating and approving the proposed Settlement.  Goldberg Decl. (Ex. 1), ¶¶ 4-5, 7; Zwicker Decl. (Ex. 2), ¶¶ 4-5, 7.

These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. 2009); *see also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (granting PSLRA awards where "the tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks . . . appear[ed] reasonable to the furtherance of the litigation").  Additionally, the Internet Long Form Notice informed Class Members that Lead Plaintiffs would request up to $5,000 each in reimbursement for their costs and expenses, and there have been no objections thereto. Accordingly, Lead Counsel respectfully requests that the Court grant Plaintiffs' requests for reimbursement of their "reasonable costs and expenses incurred in managing this litigation and representing the Class."  *Marsh & McLennan*, 2009 WL 5178546, at *21; *see also In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs); *Magicjack*, No. 16-cv-0169 (VM), slip op. at 1 (awarding lead plaintiffs $5,000 each for PSLRA awards) (Ex. 6); *Anwar v. Fairfield Greenwich Ltd.*, No. 09-cv-118 (VM) (FM), slip op. at 3 (S.D.N.Y. Mar. 28, 2013) (awarding

seven plaintiffs reimbursement in amounts ranging from $25,000 to $50,000); *Rubin v. MF Global Ltd.*, No. 1:08-cv-02233(VM), slip op. at 2 (S.D.N.Y. Nov. 18, 2011) (awarding lead plaintiffs expenses of $4,786.86, $5,300, $5,412.54, and $5,000, respectively); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Lead Counsel respectfully request that the Court grant their fee and expense application.

Dated: August 10, 2018

**COHEN MILSTEIN SELLERS & TOLL PLLC**

_____s/ S. Douglas Bunch_____
Daniel S. Sommers
S. Douglas Bunch
Elizabeth A. Aniskevich
Adam H. Farra
1100 New York Ave., N.W., Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
eaniskevich@cohenmilstein.com
afarra@cohenmilstein.com

*Counsel for Co-Lead Plaintiff Amatrine L.P.*
*and Co-Lead Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**

_____s/ Kara M. Wolke_____
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: kwolke@glancylaw.com

*Counsel for Co-Lead Plaintiff Theodore*
*Zwicker and Co-Lead Counsel for the Class*

Jacob Sabo
**LAW OFFICE OF JACOB SABO**
#3 Daniel Frisch St. / 24th Floor
Tel-Aviv, Israel 64731
Tel.:  03-7161555
Fax:  03-7161556

*Additional Attorney for Co-Lead Plaintiff*
*Amatrine L.P.*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On August 10, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 10, 2018.

*s/ Kara M. Wolke*
Kara M. Wolke

# Mailing Information for a Case 1:16-cv-03893-VM In re Ability, Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Elizabeth Anne Aniskevich**
  eaniskevich@cohenmilstein.com

- **Stephen Douglas Bunch**
  dbunch@cohenmilstein.com,efilings@cohenmilstein.com

- **Elaine Chang**
  echang@glancylaw.com

- **John H. Eickemeyer**
  jeickemeyer@vedderprice.com,ecfnydocket@vedderprice.com,docketing-6992@ecf.pacerpro.com,john-eickemeyer-0088@ecf.pacerpro.com

- **Edward Paul Gilbert**
  egilbert@morrisoncohen.com,courtnotices@morrisoncohen.com

- **Jason P. Gottlieb**
  jgottlieb@morrisoncohen.com,courtnotices@morrisoncohen.com

- **Daniel Cahen Isaacs**
  disaacs@morrisoncohen.com,courtnotices@morrisoncohen.com

- **Scott J. Link**
  scott@linkrocklaw.com,tina@linkrocklaw.com,linda@linkrocklaw.com

- **Lesley Frank Portnoy**
  LPortnoy@glancylaw.com,info@glancylaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com,echang@glancylaw.com,JCohen@glancylaw.com

- **Kara Berard Rockenbach**
  kara@linkrocklaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Marc Brett Schlesinger**
  mschlesinger@vedderprice.com,marc-schlesinger-5894@ecf.pacerpro.com,ecfnydocket@vedderprice.com,docketing-6992@ecf.pacerpro.com

- **Daniel Stephen Sommers**
  dsommers@cohenmilstein.com,afarra@cohenmilstein.com,efilings@cohenmilstein.com

- **Kara M. Wolke**
  kwolke@glancylaw.com,info@glancylaw.com,kara-wolke-0535@ecf.pacerpro.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)