UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ABILITY INC. SECURITIES LITIGATION | CASE NO. 1:16-cv-03893 (VM) |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF A CLASS DISTRIBUTION ORDER**

Lead Plaintiffs Amatrine L.P. and Theodore Zwicker (collectively, "Lead Plaintiffs" or the "Plaintiffs") submit this memorandum in support of their Unopposed Motion for Entry of a Class Distribution Order (the "Motion"). This Motion further requests reimbursement of a modest amount of supplemental expenses incurred in prosecuting the Action.

The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Declaration of Lance Cavallo in Support of Lead Plaintiffs' Motion for Distribution of Net Settlement Fund ("Cavallo Decl."), submitted on behalf of the Court-approved Claims Administrator, Kurtzman Carson Consultants, LLC ("KCC"). Lead Plaintiffs have provided advance notice of the Motion to Defendants (together with Lead Plaintiffs, the "Parties"), who have indicated they do not oppose the relief sought, and file the Motion consistent with paragraph 7.8 of the Stipulation and Agreement of Settlement (ECF No. 74-1) (the "Stipulation").[1]

**I.    OVERVIEW**

On April 25, 2018, the Parties entered into the Stipulation and Lead Plaintiffs filed a motion for preliminary approval thereof. ECF No. 98. The Court granted that motion on May

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and the Cavallo Declaration.

18, 2018. ECF No. 84 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator mailed approximately 1,900 copies of the Postcard Notice to potential members of the Class,[2] published the Settlement Notice over *PR Newswire* and in *Investor's Business Daily*, established a Settlement website (www.AbilitySecuritiesSettlement.com), and set up a telephone hotline. *See* Declaration of Lance Cavallo dated August 8, 2018 (ECF No. 89-3). The website and hotline enabled Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing claims, and provided access to important documents relevant to the Settlement, including the Internet Long Form Notice. *Id*.

Under the terms of the Settlement, a $3,000,000 Settlement Fund was established for the settlement of the Released Plaintiffs' Claims asserted against Defendants. Pursuant to the Settlement, Postcard Notice, Internet Long Form Notice, and Proof of Claim Form, all Class Members wishing to participate in the Settlement were required to submit Proof of Claim Forms by mail, postmarked on or before October 16, 2018 (the "Proof of Claim Deadline"). As detailed in the Cavallo Declaration, the Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to the possible ways to cure the deficiency. Cavallo Decl., ¶¶ 18-25.

As described more fully in the Cavallo Declaration, of the 456 Claims received by the Claims Administrator through May 1, 2019, 379 were filed electronically ("Electronic Claims"). Electronic Claims are typically filed by institutional investors who may have hundreds or

---

[2] In addition, KCC re-mailed 3 Postcard Notices to persons whose original mailings were returned by the U.S. Postal Service ("USPS") and for whom updated addresses were provided to KCC by the USPS or through a third-party vendor.

thousands of transactions during the Class Period. *Id.*, ¶ 11. Seventy-seven (77) Claims were filed on paper. *Id.*, ¶ 9.

Of the 456 Claims, 14 were postmarked after the October 16, 2018 Proof of Claim Deadline. Cavallo Decl., ¶ 26. Two Claims that were received after the deadline, but are otherwise eligible, have been recommended for acceptance. It is the belief of Lead Counsel and of the Claims Administrator that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Proof of Claim Forms but while the Claims were still being processed. Accordingly, it is respectfully requested that the Court approve KCC's administrative recommendation and permit KCC to include late, but otherwise eligible, Proofs of Claim in the Distribution Plan. *See* Cavallo Decl., ¶ 26.

Despite the request that the Court grant approval of distribution to late but otherwise eligible Claims that have been received, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. Acceptance of any Claim received after preparation of this Motion would necessarily require a delay in the distribution. *See id.* Accordingly, it is also respectfully requested that this Court enter an Order directing that no Claim received or adjusted after May 1, 2019 be included in the initial distribution. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and … the matter must be terminated.'") (quoting *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977)) (ellipses in

original). Accordingly, Lead Plaintiffs respectfully request that the Court impose a cut-off date of May 1, 2019. *See* Cavallo Decl., ¶ 27.

## II. THE DEFICIENCY PROCESS AND DISPUTED CLAIMS

If a Proof of Claim Form was deficient or defective, KCC sent a rejection letter, samples of which are attached as Exhibit A to the Cavallo Declaration, advising the Claimant that he, she, or it had 20 days to submit additional information to cure the Claim, or else KCC would recommend the Claim for rejection. Cavallo Decl., ¶ 19. KCC sent approximately 100 such letters, and worked diligently with Claimants to resolve deficiencies where possible. *Id.*

As a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement. *See* ¶ 20. Nevertheless, 104 Claims were ultimately rejected, mostly because the transactions were not made during the Class Period or did not calculate to a Recognized Loss. *Id.*, ¶ 34. As part of the deficiency process, KCC informed Claimants whose Claims were rejected that they could request judicial review of their Claims. No Claimants requested such review. Cavallo Decl., ¶ 21.

## III. DISPOSITION OF CLAIMS

As detailed in the Cavallo Declaration, KCC has determined that 352 Claims are acceptable and should receive a distribution. This number includes two late but otherwise valid Claims. Cavallo Decl., ¶¶ 26, 34. The sum total of Recognized Losses for all 354 provisionally accepted Claims calculated in accordance with the Court-approved Plan of Allocation is $7,467,838.40.[3] *Id.* at ¶ 36.

---

[3] Recognized Losses total $7,139,466.43 for timely valid Claims and $328,371.97 for late but otherwise valid Claims.

## IV. DISTRIBUTION OF NET SETTLEMENT FUND

Because it is likely that a certain number of the payments distributed to Class Members who filed valid Claims will not be cashed promptly, Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY. VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED 90 DAYS AFTER ISSUE DATE." Cavallo Decl., at ¶ 38(iv).  In Lead Counsel's prior experience, a notation of this sort can encourage Class Members to cash their distribution checks promptly, helping avoid the cost of increased future expenses related to unpaid distributions.

Moreover, as described above, in order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement beyond the amount allocated to them.  Accordingly, it is respectfully requested that the Court issue an order for distribution of the balance of the Net Settlement Fund allowing for these terms.  The proposed Class Distribution Order filed herewith includes such terms at paragraph 8.

## V. DISPOSITION OF UNCLAIMED OR UNCASHED DISTRIBUTION CHECKS, OR OF REMAINING FUNDS IN THE NET SETTLEMENT FUND

Paragraph 7.10 of the Stipulation provides that if any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, after the Claims Administrator has made reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds

shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants or to pay any late, but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, provided that such distributions to any late post-distribution claimants meet all of the other criteria for inclusion in the initial distribution, including the $10.00 minimum check amount set forth in the Notice; (ii) second, to pay any additional Notice and Administration Costs incurred in administering the Settlement and; (iii) finally, to make supplementary distributions to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such supplementary distributions, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making these supplementary distributions, if such supplementary distributions are economically feasible.  If six (6) months after such supplementary distributions, if any, or if such supplementary distributions are not undertaken, any funds shall remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to a secular non-profit 501(c)(3) organization(s) selected by Lead Counsel.

## VI. SUPPLEMENTAL EXPENSES

Lead Counsel also request reimbursement of $5,686.97 in supplemental expenses incurred while prosecuting the Action, including expenses incurred while defending the Settlement on appeal.  In support of this request, Lead Counsel have submitted a declaration attesting to these expenses, which may properly be recovered by counsel. *See In re Flag Telecom Holdings, Ltd. Sec. Litig*., No. 02-CV-3400 CM PED, 2010 WL 4537550, at *30 (S.D.N.Y. Nov. 8, 2010) ("It is well-accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC*

*Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients."). These expenses were incurred primarily for professional services rendered by Plaintiffs' investigator and for Lead Counsel's research costs and court fees incurred in defending the Settlement following the objector's appeal of the final approval order. *See Levy v. Zwicker, et al.*, No. 18-2772 (2nd Cir. 2018).[4] These expenses were necessary to Plaintiffs' success in achieving and defending the Settlement, are reasonable in amount, and are customary expenses in a complex securities class action such as this one. As such, they should be reimbursed. *See Flag Telecom*, 2010 WL 4537550, at *30; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the [s]ettlement fund."). Notably, even after reimbursement of these supplemental expenses, the total expenses for which Lead Counsel have sought reimbursement will still be well below the $100,000 cap on expenses set forth in the Notice.[5]

## VII.   CONCLUSION

For the above reasons, Lead Plaintiffs respectfully request that their Unopposed Motion for a Class Distribution Order and reimbursement of supplemental expenses be granted.

---

[4] While the appeal was settled just prior to Plaintiffs-Appellants' filing deadline for their answering brief, Lead Counsel already had substantially completed drafting of the answering brief.

[5] In its order dated September 14, 2018, the Court awarded reimbursement of $47,538.19 in expenses.

Dated: June 19, 2019                              Respectfully submitted,

| **COHEN MILSTEIN SELLERS & TOLL PLLC** | **GLANCY PRONGAY & MURRAY LLP** |
|---|---|
| _____*s/ S. Douglas Bunch*_____ | _____*s/ Kara M. Wolke*_____ |
| Daniel S. Sommers | Kara M. Wolke |
| S. Douglas Bunch | 1925 Century Park East, Suite 2100 |
| Adam H. Farra | Los Angeles, California 90067 |
| 1100 New York Ave., N.W., Suite 500 | Tel.: (310) 201-9150 |
| Washington, D.C. 20005 | Fax: (310) 201-9160 |
| Tel.: (202) 408-4600 | Email: kwolke@glancylaw.com |
| Fax: (202) 408-4699 | |
| Email: dsommers@cohenmilstein.com | *Counsel for Co-Lead Plaintiff Theodore* |
| dbunch@cohenmilstein.com | *Zwicker and Co-Lead Counsel for the Class* |
| afarra@cohenmilstein.com | |

*Counsel for Co-Lead Plaintiff Amatrine L.P. and Co-Lead Counsel for the Class*

Jacob Sabo
**LAW OFFICE OF JACOB SABO**
#3 Daniel Frisch St. / 24th Floor
Tel-Aviv, Israel 64731
Tel.:  03-7161555
Fax:  03-7161556

*Additional Attorney for Co-Lead Plaintiff Amatrine L.P.*

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On June 19, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 19, 2019.

*s/ Kara M. Wolke*
Kara M. Wolke